[No. 15803.   Department One.—April 30, 1895.]

## M. J. HELM, RESPONDENT, v. FRANK McCLURE ET UX., APPELLANTS.

DEDICATION OF HIGHWAY—QUESTION OF FACT—EVIDENCE OF INTENTION—PUBLIC USER.—Whether a dedication of land for highway purposes has occurred in any instance is a conclusion of fact to be drawn from the circumstances of the particular case; and such circumstances must clearly show an unequivocal intention manifested by the owner to devote his land to wayfaring uses; and the public must accept the proffered dedication in accordance with the apparent offer of the owner. Such acceptance may be signified by public user.

ID.—DEDICATION OF AVENUE—SALE OF ABUTTING LOTS—USER—CONFLICTING EVIDENCE AS TO INTENTION.—Where the evidence shows that an avenue, in the form of a *cul de sac,* was opened by the owner of land, and that, from time to time, he sold parcels of land abutting on both sides of the avenue, which opened into the public street of a town, and declared to lotowners that the avenue was intended as a street for their benefit, and the avenue was used by the owners of the lots and by many other persons as a public passage for many years, to the knowledge of the original owner, and without objection from him, the court is justified in finding the dedication of the avenue as a highway, notwithstanding a denial by the original owner of the land that he had dedicated the land for highway purposes, or had any intention of doing so, and notwithstanding other conflicting evidence of acts and declarations on his part inconsistent with such intention.

ID.—TESTIMONY OF OWNER AS TO INTENTION NOT CONCLUSIVE.—The testimony of the owner of land as to his intention not to dedicate it to public use is relevant, but not conclusive, evidence upon the subject of his actual purpose.

ID.—OBSTRUCTION OF HIGHWAY—ABATEMENT OF PUBLIC NUISANCE—SPECIAL DAMAGE.—Where obstructions in a public highway cut off access to the highway from the land of an abutting owner, such owner sustains injury in such a special sense as to entitle him to maintain an action for the abatement of a public nuisance caused by the obstruction.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial.

The facts are stated in the opinion.

*J. A. Cooper,* for Appellants.

Special damage, different in kind from that suffered by the public, must be shown in order to maintain this action. (*Aram* v. *Schallenberger,* 41 Cal. 450; *Bigley* v.

*Numan,* 53 Cal. 405; Wood on Nuisances, secs. 618, 619, 637, 642.) And such action can only be maintained by an individual when the obstruction prevents his getting onto a public highway from his own land. (*San Jose Ranch Co.* v. *Brooks,* 74 Cal. 464; *Hargro* v. *Hodgdon,* 89 Cal. 628.) The evidence entirely fails to show that the land upon which the obstructions were placed is a public highway. It neither shows an intention by the owner clearly indicated by his words or acts to dedicate the land to public use, nor an acceptance by the public of the dedication. (Elliott on Roads and Streets, 85; *San Francisco* v. *Canavan,* 42 Cal. 553; *San Francisco* v. *Calderwood,* 31 Cal. 585; 91 Am. Dec. 542; *Harding* v. *Jasper,* 14 Cal. 647; *People* v. *Reed,* 81 Cal. 70; 15 Am. St. Rep. 22.) The fact that a few families who lived along the alley had traveled it for several years without objection does not render it a public highway. (*Stallard* v. *Cushing,* 76 Cal. 472; *People* v. *Dreher,* 101 Cal. 271; Elliott on Roads and Streets, 137.) In this case it is claimed that a *cul de sac* has been dedicated. Such roads are not much favored in law, and formerly could not be dedicated. (Washburn on Easements, 152.)

*Hudson & Sayre,* and *J. H. Seawell,* for Respondent.

The evidence clearly shows a dedication of the land in question to the public as a street. (*Harding* v. *Jasper,* 14 Cal. 643; Greenleaf on Evidence, sec. 662; *San Leandro* v. *Le Breton,* 73 Cal. 170; Elliott on Roads and Streets, 90–99; *Patterson* v. *Munyan,* 93 Cal. 128; *Plummer* v. *Sheldon,* 94 Cal. 533; *Gutherie* v. *New Haven,* 31 Conn. 308.) The plaintiff sustained such special injury as entitled her to bring this action. (Civ. Code, sec. 3493; Code Civ. Proc., sec. 731; *Schulte* v. *North Pac. T. Co.,* 50 Cal. 592; *Ford* v. *Santa Cruz R. R. Co.,* 59 Cal. 290; *Blanc* v. *Klumpke,* 29 Cal. 156.)

BRITT, C. — Action begun May 18, 1893, to abate an alleged public nuisance, plaintiff claiming to have sustained special damage. After trial the court found that

for fifteen years last past there has been a public road in the county of Lake, about forty-three rods in length, which is an extension northeasterly of Main street in the town of Upper Lake; that for upwards of three years last past plaintiff has been the owner and in possession of a lot of land on the west side of, and adjacent to, said public road; that the only means of entrance and exit to and from plaintiff's lot is over such highway, and she had been accustomed to travel with vehicles and on foot over the same to her lot until about December 1, 1891, when defendants erected a dwelling-house and fence in said road, whereby access to and egress from her lot is wholly prevented; that plaintiff has suffered no pecuniary damage by reason of such obstructions, but has been injured in a " manner different in degree and in kind from what the public in general have suffered "; that the defendants—who are husband and wife—are the owners of the land on which the obstructions rest subject to the right of the public to use the same as a highway. The findings were filed October 14, 1893. The judgment directed the removal of the house and fence. Defendants moved for a new trial, which was denied, and have appealed from the judgment and the order denying such motion.

The principal matters agitated here are whether the evidence supports the conclusions of the court that the place where defendants erected their structures is a highway, and that plaintiff has sustained detriment different in kind from that suffered by the public at large. The evidence shows that the alleged highway has for many years been known locally as 'Dewell avenue'; and for brevity we may refer to it here as the 'avenue.' From the record, including a map of the way and premises involved, it appears that about the year 1870 one Benjamin Dewell was the owner of the land "all around the premises claimed to be a road," as well as that included in the avenue itself. From time to time he sold the land abutting on both the east and west sides of the avenue in parcels of varying dimen-

sions, probably five in all. The parcel including plaintiff's lot was conveyed by Dewell to one Waller as early as 1874; it had a frontage on the west side of the avenue of a little more than twenty rods, and has been subdivided into four lots owned by as many different persons, but all fronting on such avenue. Dewell yet owns, and, it seems, resides on the land to the northward of the avenue, into which at its northern extremity he has a gateway. For more than fifteen years such avenue has been marked and inclosed at its northern end by Dewell's fence and gate, and on its east and west sides by the fences of the persons to whom Dewell sold the abutting parcels of land or their successors in interest; and open at its southern extremity into the northern end of Main street in the town of Upper Lake. The avenue is thus a *cul de sac*. It is about six feet wider than said street, which latter is seventy feet in width; the east line of the avenue being continuous with the east line of the street, but the west line of the street at the point of junction is about six feet further east than the west line of the avenue. A creek (or slough, as it is commonly called in the evidence), fifteen or twenty feet wide, courses along the westerly side of the avenue the greater part of its length. During the winter season water runs in this slough to the depth of several feet. The plaintiff's lot is about eighteen rods in length —east and west—and about four rods in width; it includes at its eastern end the greater part of the width of said slough, but appellants deny that it extends to the line of the alleged highway—a matter to be noticed further on. The south line of plaintiff's lot—assuming that it extends to said avenue—intersects the same at a point about seven rods north of the junction of the latter with said Main street. Plaintiff constructed an embankment or breakwater four and one-half feet high on her lot along the west side of said slough to prevent the overflow of water therefrom. This embankment prevented communication between her lot and the avenue, unless by means of a bridge across the slough,

and she designed to rest one end of such a bridge on the embankment, and had hauled materials for the bridge and deposited the same in the avenue on the east side of the slough, when defendants removed the materials and then built their fence and obstructed the roadway so that plaintiff could not reach her lot therefrom or construct the bridge.

Dewell conveyed to defendant Luella McClure a strip of land lying lengthwise of the avenue and in the same, about fifty-four feet in width and three hundred feet in length, having for its southern boundary the south end of the avenue where the same unites with said Main street, and for its western boundary the east line of the tract previously sold to Waller; this strip, fifty-four feet by three hundred feet, taken out of the western side of the avenue was fenced and otherwise improved by defendants, leaving a narrow lane, twenty feet or little more in width, in the eastern part of the avenue yet open for passage. Such fence and improvements are the obstructions which the judgment requires to be abated as a nuisance. It does not appear precisely when the conveyance was made by Dewell to Luella McClure, but it was probably about the year 1890; in November of that year defendant Frank McClure had begun his house, and was then forbidden by the witness Dunton to obstruct the avenue.

There has never been any expenditure of labor or money by the highway authorities of the county or road district on the way in question. Its character as a highway depends upon its dedication for that purpose by Dewell while he was yet the owner, and its acceptance as such by the public. Concerning this question there was evidence, in addition to the matters above stated, that the avenue has been used for passage by many persons other than those whose lands abut upon it; while as to these latter there appear to be six or eight proprietors whose principal, if not sole, means of exit from and access to their respective lots are afforded by the disputed roadway; they and their prede-

cessors have customarily used it in reaching the town of Upper Lake. It seems a fair inference from the evidence to say that the so-called avenue has, as regards its use, partaken rather more of the character of a village street than of a strictly rural lane.

Mr. Dewell knew of the travel over the avenue, and that somewhat numerous persons were using it as a roadway for, it seems, at least fifteen years, but took no measures to prevent such use. One Cook, the former owner of a parcel of land adjoining plaintiff's lot, testified that at the time he purchased his lot, in 1874, he made inquiry of Dewell about the character of the avenue, and Dewell replied that it was a street " as far south as the property extended that he sold to Waller": that it was his intention " for the benefit of settlers and for his own benefit to open up this street." One Fritz testified that about the year 1877, under similar circumstances—he intending to buy an abutting lot yet further north than the Waller tract—Dewell told him to complete the purchase; that the avenue always would be a street to that lot—never would be stopped.

We understand the law to be well settled that whether a dedication of land for highway purposes has occurred in any instance is a conclusion of fact to be drawn from the circumstances of the particular case; that such circumstances must clearly show an unequivocal intention, manifested by appropriate words or conduct, or both, on the part of the owner, to devote his land to the wayfaring uses of that somewhat vague entity called " the public"; that the public must accept the proffered dedication, but such acceptance may be signified and the dedication made perfect by public user in accordance with the apparent offer of the owner. (*Harding* v. *Jasper*, 14 Cal. 647; *San Francisco* v. *Calderwood*, 31 Cal. 589; 91 Am. Dec. 542; *Smith* v. *San Luis Obispo*, 95 Cal. 470; *People* v. *Marin County*, 103 Cal. 223; *Hall* v. *Kauffman*, 106 Cal. 451.) The evidence in the present case, above outlined, was sufficient to fulfill the requirements of the law as here stated, and as illustrated

by the cases cited.   It is true that Mr. Dewell testified
that he had never dedicated the land for highway pur-
poses, and  had  no  intention  to  do  so, and  denied the
declarations testified  to by Cook and Fritz, and there is
evidence  of  acts and declarations on  his part inconsist-
ent with  such  intent;  his testimony was  relevant, but
not conclusive, evidence upon the  subject of his actual
purpose;  (*City  of  Chicago*  v.  *Chicago etc.  Ry.  Co.*, 152
Ill. 561); there  was  thus  a  conflict  of  evidence  which
the trial court  resolved in favor of  plaintiff.   The find-
ing of  a highway should stand.

We are  of  opinion  also  that  the  plaintiff  sustained
injury in such  a  special  sense  that  she was  entitled to
maintain this action. (Civ. Code, sec. 3493.)   The obstruc-
tions cut off access from her land to the highway. (*Har-
gro* v. *Hodgdon*, 89 Cal. 628.)   Appellants claim that the
embankment constructed  by plaintiff  on  the  west side
of the  slough  of itself  prevents  her access to the road-
way, and  therefore she cannot be  specially  damnified
by their obstructions.   True, the  evidence  shows  that
plaintiff must reach  the avenue, since the  embankment
was constructed, by a  bridge across the slough, one end
of which must, or may, rest on  the  embankment; but
this does  not  establish  that  plaintiff's  own  structure,
and not those of  defendants, cause  plaintiff's injury; if
it did, then a  fence or  wall  would  have  the same  effect,
and the result would be that only uninclosed lots would
be protected by the rule plaintiff invokes here.   Appel-
lants further contend  that the plaintiff has not suffered
special damage, because (they say) her lot does not abut
upon  the alleged  highway; that  the  slough intervenes
between the east boundary of  her  lot and  the  west line
of  the  avenue.   The  map  accompanying  the  record
shows that at one point the entire width of the slough is
on plaintiff's lot, so  that  if appellant's assumption that
the alleged highway reaches only the east margin of the
slough be correct, plaintiff might still construct a bridge
entirely on  her  own  land, and  reach  the roadway but
for the obstructions of the defendants.   Besides, it was

admitted at the trial that the defendants have fenced the parcel of land conveyed to defendant Luella by the deed of Dewell, and the map shows that this parcel abuts upon the lot of plaintiff throughout the width of the latter lot; the court found that defendants' fence is around land comprised in a highway, and we have seen that the evidence sustains the finding; it necessarily follows that, as shown by the record, the east line of plaintiff's lot is coincident with the west line of the highway.

Appellants question the sufficiency of the complaint. It is certainly not a model of pleading, but we do not think it fatally defective in the particulars specified by them.

The judgment and order appealed from should be affirmed.

HAYNES, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.
                HARRISON, J., GAROUTTE, J., VAN FLEET, J.