[L. A. No. 2254. Department One.—August 16, 1909.]

# CITY OF LOS ANGELES, Respondent, v. JOHN McCOLLUM et al., Appellants.

Dedication of Public Street—Recording of Map—Offer of Dedication.—Whether land has been dedicated as a public street is, in each case, a question of intention. The recording by the owner of a map of a tract of land, within the limits of a municipality, on which the tract was divided into lots and blocks, and streets were laid out in connection with the plat for the use of prospective purchasers of said lots and blocks, constitutes an offer to dedicate as public highways of the municipality the streets shown upon the map   The fact that the strip of land delineated on the map as a street was not named or designated as such, and that one end was cut off by a dotted line so as to form a cul-de-sac, does not overcome the inference that it was intended to mark a street or public highway.

Id.—Acceptance by Municipality by General Ordinance.—An ordinance of the city council, accepting in general terms all streets, parks, etc., theretofore offered to the public for dedication, is a sufficient acceptance of the offer to dedicate arising from the recording of such map.

Id.—Revocation of Offer—Finding—Conflict of Evidence.—Where rights of individuals have not intervened, an offer to dedicate may be revoked before acceptance by the proper public authorities, but a finding against such revocation will not be disturbed when the evidence is conflicting.

Id.—Acts of Owner Conclusive of Intent—Evidence of Contrary Intent Inadmissible.—In an action involving the question whether land has been dedicated to the public, the rule that the owner may give testimony of his actual intent is limited to cases where the acts done by him do not manifestly indicate an intent to dedicate. Where they are inconsistent with anything but such intent, he cannot destroy the effect of his own conduct by subsequent declarations that he did not mean to be bound by the necessary import of that conduct. Consequently the owner, after the recording of such map, cannot give testimony of an intent not to dedicate the strips delineated thereon as streets.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Elizabeth L. Kenney, Charles L. Batcheller, and Thos. C. Ridgway, for Appellants.

Leslie R. Hewitt, City Attorney, and Haas, Garrett & Dunnigan, for Respondent.

SLOSS, J.—Action by the city of Los Angeles to recover possession of a parcel of land claimed to be part of a public street. Judgment went for plaintiff, and four of the defendants appeal from the judgment and from an order denying their motion for a new trial.

The court finds that on June 27, 1884, the defendant Elmira Hall, then the owner of a tract of land including the parcel in controversy, caused to be recorded a plat or map, in which said tract was divided into lots and blocks, and streets were laid out in connection with the plat for the use of prospective purchasers of said lots and blocks. By such recording, she offered to dedicate as public highways of the city of Los Angeles the streets shown upon the map. The strip of land in controversy was shown upon the map as a public street and formed a continuation or extension of Johnston Street, a then public and accepted street of the city. The street was thereupon opened for public travel, and remained so until August, 1894. In December, 1890, the city council, by ordinance, accepted said street so offered to be dedicated as a public street. The offer to dedicate was never withdrawn or rescinded prior to August, 1894.

The appellants attack as unsupported by the evidence the findings that there was an offer to dedicate, and that such offer, if any was made, was not revoked prior to acceptance. We think the evidence fully sustains each of these findings. The questions presented can be best explained by a reproduction of the essential features of the map filed by Mrs. Hall in June, 1884.

The land in controversy is the undesignated strip, 94 links in width, running along the westerly line of lot 21. That this strip, south of its intersection with "Hall Street," as shown on the map, was and is a public street, known as Johnston Street, is not disputed by appellants, but they contend that no street was created north of Hall Street. It seems perfectly clear that the court was at least authorized, if not bound, to

conclude, from a mere inspection of the map itself, that its filing constituted an offer to dedicate, as a public street, the whole of the strip bordering on lots 1 and 21. Dedication is, in each case, a question of intention (*Harding* v. *Jasper*, 14 Cal 643; *San Francisco* v. *Canavan*, 42 Cal. 541). The filing of a map showing a subdivision of land into lots and blocks, followed by a sale of lots as designated on the map, constitutes an offer to dedicate to public use the spaces marked thereon as streets. (*Logan* v. *Rose*, 88 Cal. 263, [26 Pac. 106].) We have no doubt that this map did mark the disputed strip as a street. It is true that it is not, on the face of the map, described or named as a street. On the other hand, it is not numbered as a lot, nor is it, by lines, cut off from the adjoining streets and bounded, as are the lots shown on the plat. It joins Hall Street, and, so far as the map shows, furnishes the only means of access to Hall Street, and through it to the numbered lots of the subdivision. There is nothing to indicate any distinction or demarcation between the part of the strip north, and that south of the northerly line of Hall Street; the latter, as we have said, being concededly a public street. As against all this, the fact that the strip is not named or designated as a street does not overcome the inference that it was intended to mark a street or public highway. (*San Francisco* v. *Burr*, 108 Cal. 460, [41 Pac. 482]; *London & S. F. Bank* v. *City of Oakland*, 90 Fed. 691, [33 C. C. A. 237]; *Rowan* v. *Town of Portland*, 8 B. Mon. (Ky.) 232, 246; *Hansen* v. *Eastman*, 21 Minn. 509; 2 Elliott on Roads and Streets, sec. 119.) Nor is any force to be attributed to the circumstance that the northerly end of the strip was cut off by a dotted line. In each of the cases last cited, the land held to be dedicated constituted a cul-de-sac.

Where rights of individuals have not intervened, an offer to dedicate may be revoked before acceptance by the proper public authorities (*Prescott* v. *Edwards*, 117 Cal. 298, [59 Am. St. Rep. 186, 49 Pac. 178]; *Los Angeles* v. *Kysor*, 125 Cal. 463, [58 Pac. 90]). Here, however, the offer was duly accepted by ordinance of the city council, accepting in general terms all streets, parks, etc., theretofore offered to the public for dedication. This was a sufficient acceptance (*City of Eureka* v. *Armstrong*, 83 Cal. 623, [22 Pac. 928, 23 Pac. 1085]). On the question of revocation before acceptance, the

most that can be said in support of appellants' position is that the evidence was conflicting. There was testimony tending to show that the strip in question had never been used as a road; that natural conditions were such as to preclude such use, and that the defendant Hall had at all times kept it fenced at both ends, had a house standing upon it, and had exercised acts of ownership inconsistent with the existence of a public right of way. But, if these circumstances evidenced a revocation of the offer to dedicate, they were met by testimony showing that parties having occasion to reach the land beyond the strip did use it as a passageway from time to time, and that the southern end of the strip was not closed until after the passage of the ordinance of acceptance. This testimony supports the finding that there had been no revocation prior to acceptance.

A point is made on the refusal of the court below to permit Mrs. Hall to testify that she had not intended to dedicate the alleged street. The position of the appellants is that, inasmuch as the ultimate question, in cases of dedication, is one of intention, the party may be asked to state his intention in performing the acts relied on as evidencing a dedication. Such testimony has, in cases of this character, been held to be admissible for the purpose of throwing light upon the real nature of acts which were in themselves consistent with the intent to dedicate or not to dedicate. (*Bidinger* v. *Bishop,* 76 Ind. 244; *Pittsburg etc. R. Co.* v. *Noftsger,* 148 Ind. 401, [47 N. E. 332]; *Goodfellow* v. *Riggs,* 88 Iowa, 540, [55 N. W. 319]; *City of Chicago* v. *McClure,* 152 Ill. 561, [38 N. E. 768].) In *Helm* v. *McClure,* 107 Cal. 199, [40 Pac. 437], this court said that the testimony of the alleged dedicator that he had had no intention to dedicate "was relevant, but not conclusive, evidence of his actual purpose."

On the other hand, the rule that the party may give testimony of his actual intent should, we think, be limited to cases where the acts done by him do not manifestly indicate an intent to dedicate. Where they are inconsistent with anything but such intent, he cannot destroy the effect of his own conduct by subsequent declarations that he did not mean to be bound by the necessary import of that conduct. No weight should be given to declarations of an intent contrary to that plainly shown by acts done and acted on long before. "The

intention to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. It is the intention which finds expression in conduct, and not that which is secreted in the heart of the owner, that the law regards." (*Indianapolis* v. *Kingsbury,* 101 Ind. 201, 213, [51 Am. Rep. 749]; *Fossion* v. *Landry,* 123 Ind. 136, [24 N. E. 96]. See, also, *Morgan* v. *Railroad Co.,* 96 U. S. 716; 4 Wigmore on Evidence, sec. 2413, note.) In accordance with these views, this court has held it proper to exclude evidence of the unexpressed intention of the landowner where her acts and deeds plainly indicated that she intended to dedicate, and did dedicate, a street to public use. (*Brown* v. *Stark,* 83 Cal. 636, [24 Pac. 162].) What we have already said concerning the map filed by Mrs. Hall will be sufficient to make clear our reasons for holding, as we do hold, that the paper itself, taken in connection with the fact that it was made and filed as the basis for sales of lots delineated thereon, so clearly manifested an intent to offer the strip in question for dedication that the court was fully justified in excluding Mrs. Hall's offer to prove by her own statement that she had a contrary intent. In any view, the exclusion of the proffered testimony, if erroneous, was without prejudice, as her statement would have been entitled to no weight as against her prior unequivocal acts.

It is also urged that the court erred in striking out some of Mrs. Hall's testimony with reference to the preparation of the map. The court's ruling went no further than to strike out her testimony that she had instructed her surveyor to leave a street from Griffin Avenue and that she did not intend to leave Johnston Street open beyond the north line of avenue 28, or to have a line drawn across the space marked "proposed street." If she was entitled to show that she was ignorant of the real condition of the map when it was filed, any testimony which she may have given tending to show such ignorance was allowed to stand. Her instructions to her surveyor were mere hearsay. The exclusion of her testimony as to what she intended the map to represent was correct for reasons already stated.

The judgment and order appealed from are affirmed.

Angellotti, J., and Shaw, J., concurred.