[Civ. No. 7473. Third Dist. July 22, 1948.]

FRANK H. BARTHOLOMEW et al., Respondents, v. EMMA STAHELI et al., Appellants.

J. H. Brill and Earl C. Berger for Appellants.

Geary & Tauzer, Cooley, Crowley & Supple and Cooley, Crowley & Gaither for Respondents.

THOMPSON, J.—The defendants Emma Staheli and Victor Staheli were enjoined from using a private roadway across plaintiffs' land, except for the purpose of traveling thereon to and from their adjoining farm. The injunction prohibits defendants from overburdening their easement to use their private right of way over plaintiffs' land by inviting greatly increased travel of vehicles by means of which members and customers of defendants' nudist colony, resort and store were encouraged to patronize those enterprises conducted for pecuniary profit. From the injunction and judgment which was accordingly rendered this appeal was perfected.

The appellants contend: That the findings and judgment are not supported by the evidence; that defendants acquired adverse possession of the right of way for all purposes; that the roadway was dedicated for public use; that plaintiffs are estopped from asserting a limited easement of the roadway by a partition decree with respect to the property, which was rendered in 1906, in the matter of the estate of Kate Johnson, deceased.

The plaintiffs purchased from the State of California in 1943, the property, consisting of 435 acres of farm land, upon which the roadway in question exists. The property contained a large dwelling house; barn and other buildings, together with several acres of orchard. The state acquired that land in 1920 from Henry Cailleaud, who bought it from the Kate Johnson estate in 1906. The property was used and maintained by the state for many years, incident to the Sonoma State Home, as an Industrial Farm for Women, and thereafter as a home for epileptics. During said time, and prior thereto, a 12-foot meandering dirt roadway existed on the property, which roadway entered from a state highway on the south-westerly side and extended across the land a distance of about 1 mile to the northeast boundary where it entered defendants' adjacent farm property. The defendants bought their ranch

in 1929. During all of said time plaintiffs and their prede-cessors in title maintained gates and cattle guards on said roadway at their southwesterly boundary and beyond the buildings situated midway on the course of said road. The gates were usually kept closed and locked, but the defendants were furnished keys to the padlocks for their personal use. An iron gate was also maintained by the defendants across the road where it entered their property. That gate was also sometimes locked and a sign reading ''No trespassing'' was displayed thereon. The road extended to the dwelling house and buildings which were maintained on defendants' farm, but it did not pass through or beyond their ranch, or connect with any other road or highway. Their property was originally used by the defendants exclusively as a home and farm. It was known as the ''Fir Crag Ranch.'' Some time before the com-mencement of this action the defendants organized and main-tained on their ranch a nudist colony, a resort for renting cottages, a public dining room and a store. Those enterprises were conducted by the defendants for financial profit. On their said gate defendants displayed signs reading ''Sun-O-Ma Club'' and ''Private Club; No trespassing.'' Subsequently the club was called ''Nature's Recreation Association.'' Defend-ants distributed circulars and displayed signs directing their prospective guests and patrons to write to them at their Post Office Box 263 at Sonoma for further information. Dues for memberships in the nudist colony, and bills for entertainment and patronage of guests at the resort and for purchases by customers at the store were paid to defendants. The mainten-ance of the nudist colony and the advertisements induced vastly increased travel over the roadway across plaintiffs' land, to their great detriment. The defendant Emma Staheli admitted that in June, 1944, they registered at their resort 40 or 50 families per week. The plaintiff Frank Bartholomew testified he observed as many as 500 automobiles per week traveling that roadway during the summer of 1944. He said many of them were operated at excessive rates of speed, with mufflers open and with unusual noise and commotion, that they passed his home in the daytime, throughout the nights and on Sundays, raising clouds of dust which settled over his orchard and destroyed one-half of his fruit crop, and that the dust, the noise and tumult greatly disturbed their peace and comfort. He also said that the gates were damaged, torn from their hinges, and left open, and that the cattle guards were

changed for convenience of the machines, and that his cattle were thereby enabled to escape from their enclosure and to stray to remote localities, which they did to his great inconvenience and damage, that he wrote to the defendants in 1944, and talked with Emma Staheli on one occasion as she drove through his property, protesting against the damages incurred and the increased use of the private roadway. He said: "I talked to her about the damage to the road and the gate having been left open," and she replied that "she regretted it but couldn't be responsible for people living on her place, for their acts and what they did."

This suit for injunction was commenced July 31, 1944, to restrain the defendants and their agents from inducing or permitting the damage or destruction of plaintiffs' gates, cattle guards and roadway, and the increased burden on the easement created by the maintenance on defendants' ranch of the nudist colony and pleasure resort as commercial enterprises. The defendants' answer merely denied the material allegations of the complaint. A temporary restraining order was issued. That order was modified July 13, 1945, to prohibit defendants or their agents from removing or damaging the gates and from traveling over the land of plaintiffs, except upon and along "public ways, roads, and streets," designated as such "in Book 21 of Maps, Pages 1 and 2, Sonoma County Records." An amended answer was filed in October, 1945, in which the defendants, for the first time, affirmatively alleged title to an easement in the road in question by adverse possession, dedication of the roadway as a public highway, and an easement derived through plaintiffs' predecessor in title, Henry Cailleaud, in the suit in the estate of Kate Johnson, deceased, previously mentioned. A second amended and supplemental complaint was filed, by leave of court. The trial began November 7, 1945. A vast amount of oral and documentary evidence was adduced. The transcript contains over 1,800 pages. There is much conflict upon the essential issues of the case. The able trial judge wrote a learned opinion, carefully reviewing the evidence and applying the essential principles of law. He adopted findings favorable to plaintiffs upon all issues, except that he determined the defendants and their family, employees and personal guests had acquired an easement in the private roadway described in defendants' Exhibit "A," for traveling to and from their "real property as a single family dwelling and farm," but "not for resort,

commercial, subdivision, or other purposes." A judgment was rendered accordingly, permitting the defendants, their family, employees and personal guests to continue to use and travel said private roadway for such limited purpose, but prohibiting and enjoining them from increasing the burden on said easement by using or traveling said roadway "in connection with the conduct or maintenance of a nudist colony, or in connection with any resort, subdivision, or for any commercial purpose."

We are of the opinion the findings and judgment are amply supported by the evidence. The evidence in this case upholds the finding of the court that defendants, their family, employees and personal guests acquired an easement to use the private roadway in question in connection with and as a single family dwelling and farm only. But our attention is called to no evidence, and we have been unable to find any in the record, to support appellants' contention that they acquired by adverse possession or otherwise the right to increase that burden so as to authorize the use of the road by vast numbers of machines and individuals who visited defendants' premises in 1943 and 1944, as members of the nudist colony, to rent summer cottages and to patronize the dining room and store which were maintained and conducted by defendants for some 18 months prior to June, 1944, for the purpose of deriving pecuniary profit. The evidence clearly shows that such unauthorized increased travel and patronage of the nudist colony and resort occurred chiefly in 1943 and 1944, just prior to the commencement of this suit. We are directed by the appellants to no evidence showing that they had acquired an adverse right to enjoy their easement with its greatly increased burden and unreasonable enlargement, by proof that the road had been so used openly, notoriously and continuously, with a claim of right to do so, for the statutory period of five years or more. ■ The burden was on the defendants to furnish that evidence in support of their claim of an easement with its increased burden. ■ They failed to do so. The record is quite clear that defendants purchased their ranch in 1929 to be used for, and during many subsequent years operated it as, a home and farm, raising crops and grazing cattle thereon. It was for those purposes only that they originally acquired an easement by permission of the former owners of plaintiffs' land to travel that roadway for their personal accommodation. It was not until recent years that the nudist colony and summer resort enterprises were estab-

lished and developed into such detrimental and harmful enterprises. The easement for access to a tranquil home and farm was converted into a turbulent route to reach a hilarious nudist colony. That unauthorized change of burden on the easement was a harmful imposition upon plaintiffs' property rights. The court found that the roadway in question was not the only means of access to defendants' land. It is not claimed that said right of way or an easement therein was ever conveyed by deed or grant to the defendants or their predecessors in title. They failed to establish their claim to the enlarged easement by prescription. The court specifically found that they had acquired no such enlarged or increased rights. The evidence supports that finding. Regarding the burden which was imposed on the defendants to satisfactorily prove their claim of adverse possession of the enlarged easement, it is said in *Dooling* v. *Dabel,* 82 Cal.App.2d 417 [186 P.2d 183] :

". . . The burden is ordinarily on one who claims a prescriptive right to an easement in a private roadway over another man's property to affirmatively prove the essential elements thereof. . . . But, when the evidence of prescriptive use of a roadway is conflicting, it is the sole province of the jury or the trial judge to determine from the facts and circumstances of the case whether the prescriptive title thereto has been established. Where there is conflict of evidence in that regard, and there is substantial evidence to support the findings of the court or jury, as there is in this case, the conclusions of the court may not be interfered with on appeal. (*Conaway* v. *Toogood,* 172 Cal. 706, 709 [158 P. 200] ; *Mc-Morris* v. *Pagano,* 63 Cal.App.2d 446, 450 [146 P.2d 944].)''

When an easement is acquired by prescription, the extent of the right is fixed and determined by the manner of use in which it originated. An easement acquired by prescription cannot be extended or increased so as to enlarge the burden except by grant or by adverse user which has been acquiesced in for the required statutory time. One who has acquired an easement by prescription or by grant may not use it to impose a substantial increase or change of burden on the servient tenement. (28 C.J.S. § 76b, p. 754; 9 Cal.Jur. § 6, p. 950; Civ. Code, § 806.) In the case of *Hannah* v. *Pogue,* 23 Cal.2d 849 [147 P.2d 572], the Supreme Court says in that regard on page 854:

". . . The scope of a prescriptive easement is determined *by the use through which it is acquired.* A person using the land of another for the prescriptive period may acquire the right to continue such use, *but does not acquire the right to make other uses of it.* [Citing numerous authorities.]" (Italics added.)

Likewise, in *North Fork Water Co.* v. *Edwards,* 121 Cal. 662 [54 P. 69], regarding an easement acquired over defendant's land for the maintenance of an irrigating ditch, the Supreme Court said:

". . . Every easement includes what are termed 'secondary easements;' that is, the right to do such things as are necessary for the full enjoyment of the easement itself. But this right is limited, and must be exercised in such reasonable manner as not to injuriously increase the burden upon the servient tenement. The burden of the dominant tenement cannot be enlarged to the manifest injury of the servient estate by any alteration in the mode of enjoying the former. The owner cannot commit a trespass upon the servient tenement beyond the limits fixed by the grant or use."

The authorities in California and elsewhere uniformly support the foregoing principle of law that the extent of an easement may not be enlarged except by grant or by evidence of prescriptive use of the increased burden for the statutory period required by law. We conclude that the court was justified in finding that the defendants had not acquired, by prescription, the asserted increased burden beyond the original easement to personally travel the private roadway incident to the enjoyment of their home and farm, so as to entitle them to invite large numbers of the members and patrons of their nudist colony, the summer resort, dining room and store, to travel the private roadway to patronize those commercial enterprises, to the detriment of plaintiffs' property rights.

Indeed, the defendant Emma Staheli recognized the unauthorized use of the road by large numbers of the members of the nudist colony in 1944. She testified that in June and July of that year 40 or 50 families came to their property over the week ends. She said there was an official convention or meeting of the members of that organization at their ranch that year. She, however, denied that defendants were then operating the nudist colony, and asserted that "Mr. Ghilieri operated the Club" that year; that they proposed to sell the ranch to him. She said, "He has intentions of buying" the

property. Regarding defendants' intention of continuing to operate the ranch as they had during the preceding 18 months, for commercial profit from said enterprises, she testified as follows:

"Q. It is your intention to continue to use this road in the manner in which you have used it *during the last eighteen months* . . .? A. My future plans, of course, are renting or selling the lower 160 and carry on above at the ranch *as I always have*. The Club is not in existence and naturally it wouldn't be used in that respect. . . .

"Q. So am I to understand from that that you have no plan to operate it as a club of the type that has been operated in the past? A. That is right."

But the court was not bound by her statement that it was their intention to abandon the use of their farm for maintaining the nudist colony. If the witness was in good faith regarding the abandoning of their nudist colony enterprise, the defendants were not aggrieved by the injunction which restrains them from using the roadway for that purpose. Certainly the use of the road, as the evidence shows that it was used, constituted an unauthorized increased burden on the easement which they had acquired.

■ The appellants contend that the alleged unauthorized enlargement of the easement over the roadway was not an issue in the case, and that the court erred in adopting findings to that effect and in determining that fact. We think not. The original complaint alleged that the defendants maintained on their ranch a nudist colony, swimming tank, cottages, public dining hall and store, and that they invited the public to patronize those enterprises and to use said private roadway for that purpose. No demurrer to that complaint was filed. Subsequently, by leave of court, a second supplemental complaint was filed, in section VII of which plaintiffs more specifically alleged the maintenance of said commercial enterprises on defendants' ranch and their invitations for the public to use said roadway in patronizing the club, store, cottages and dining room. The facts alleged therein clearly show an unauthorized use of the road by the public and members of the club, and the consequential increase of burden of the easement beyond defendants' previous personal use of the private roadway. The issue of the unauthorized enlargement of the easement was adequately pleaded. The case was tried on the theory that it was an issue to be determined. The court

did not err in adopting findings and in determining that issue. The court definitely and properly found that defendants' use of the roadway "created an additional burden upon said right of way in that it greatly increased the vehicular travel thereover."

Finding II sufficiently describes the 12-foot roadway in question and the servient tenement over which it passes, by reference to paragraph II of the supplemental complaint and to defendants' Exhibit "A," which was a surveyor's diagram specifically showing the boundaries, courses and distances of the roadway. (*McLean* v. *Ladewig,* 2 Cal.App.2d 21 [37 P.2d 502]; *Newport* v. *Hatton,* 195 Cal. 132, 156 [231 P. 987]; *Reed* v. *Murphy,* 196 Cal 395, 400 [238 P. 78].) The diagram of the road was prepared by the defendants, referred to throughout the trial, and offered by them as Exhibit "A." The court finds that it was "the only road across Plaintiffs' property by which Defendants have obtained ingress to and egress from their said property." The description and identity of the road is adequate and sufficiently accurate. The courses, distances and boundaries were not questioned at the trial.

The case of *Matthiessen* v. *Grand,* 92 Cal.App. 504 [268 P. 675], upon which the appellants rely in support of their contention that the court failed to adequately describe the roadway in question, is clearly distinguishable from this action. That was a suit to quiet title to a roadway. In a cross-complaint the defendant claimed to have acquired an easement therein by prescription. The evidence showed that the defendant frequently varied from the course of the old road in question in traveling to and from his premises. In that case the chief issue was the location and course of the roadway to which plaintiff sought to quiet title. It was uncertain as to whether the findings and judgment in favor of the defendant covered the course of the old road or the route of departure therefrom which was sometimes followed by the defendant. There was a surveyor's map of the road which was offered in evidence. But it was not referred to in the findings or judgment. There was no way of determining the location or course of the roadway to which the defendant was adjudged to have acquired title by prescription. For that reason this court reversed the judgment, saying in that regard, at page 511:

". . . The obstruction complained of by respondents, the maintenance of which was enjoined by the court, was placed across one of these departures from the old roadway, which

change was claimed to have been made in 1922, two years before the action was commenced. The only evidence of the course of travel, the distances, or termini, or location of the alleged changes, was furnished by a surveyor's map which was offered by appellant. *Neither this map nor the data furnished thereby is referred to in the findings or judgment.*" (Italics added.)

In the present action, unlike the Matthiessen case, both the findings and judgment do refer not only to the complaint but to Exhibit "A" for a description of the roadway, and also further describe the road in question. We think the description is adequate.

The appellants contend that paragraph "V" of the findings, which determines that the roadway in question was never dedicated by user or accepted as a public road or highway, and that "said road is not now and never has been a public road or highway," is not supported by the evidence. They claim the roadway became a public highway by user for a long period of time. We think not. The statute precludes the acquiring of a public road in that manner. Section 2619 of the Political Code, which formerly provided that "all roads used as such for a period of five years, are highways," was repealed in 1874. (13 Cal.Jur. § 8, p. 313; Pol. Code, § 2621.) The section last cited, which was adopted in 1883 (Stats. 1883, ch. II, p. 6), provides in part:

". . . No route of travel used by one or more persons over another's land, shall hereafter become a public road or byway by use, or until so declared by the board of supervisors or by dedication by the owner of the land affected."

In the present case there is no evidence that the roadway was ever accepted or declared by the board of supervisors to be a public road. Nor is there evidence to show that it was used as such by the public generally prior to 1883.

The land over which the roadway extends was acquired in 1920 by the State of California and thereafter maintained, until it was bought by plaintiffs in 1943, as an Industrial Farm for Women, and later as a home for epileptics, incident to the Sonoma State Home, during all of which time the state maintained gates and cattle guards across the road. The defendants purchased their adjoining land in 1929, and thereafter maintained an iron gate, which was sometimes kept locked by them, at the point where the roadway entered their property. They also displayed a sign on that gate which read

"No trespassing." We are satisfied the finding adopted by the trial court that "said road is not now and never has been a public road or highway" is amply supported by the evidence.

Nor does the evidence show that the road was ever dedicated to public use by grant, or by judgment or decree in the suit entitled *Kate Johnson Estate Co.* v. *Turnbull*, decided in the Superior Court of San Francisco in 1906. It is true that the decree which directs the sale of certain properties of that estate contained the provision "all ways, roads, or streets appearing upon said map are hereby declared to be public ways, roads, and streets and shall forever remain as such." Said reference was to Book 214 of Maps, page 2, Sonoma County Records, which was received in evidence as defendants' Exhibit "E." A reference to said map discloses the fact that only three streets or roads are delineated thereon, no one of which extends to the defendants' property or corresponds with the roadway which is involved in this suit. Those streets which do appear on said map are named Wilson Street, Johnson Avenue and Buena Vista Avenue. There are some dimly dotted parallel lines on the map which meander here and there, but they are not named as ways, streets or roads. It seems clear they were not intended to represent dedicated streets or roadways. No one of such parallel dotted lines extends to the defendants' land. It may not be said that the decree in the Turnbull case, or reference to said map, marked defendants' Exhibit "E," furnishes evidence of a dedication of the roadway in question. The court definitely so determined. ▮ The intention of the owner of land to dedicate a roadway thereon as a public highway must be shown by clear and unequivocal acts or declarations. ▮ The question of whether the roadway was dedicated as a public highway was one of fact to be decided by the trial judge, whose determination thereof is binding on this court unless there is no substantial evidence to support the finding in that respect. (*Helm* v. *McClure,* 107 Cal. 199, 204 [40 P. 437]; *Smithers* v. *Fitch,* 82 Cal. 153, 158 [22 P. 935]; *Lyons* v. *Schwartz,* 40 Cal.App.2d 60, 65 [104 P.2d 383]; 9 Cal.Jur. § 55, p. 68.) In *Quinn* v. *Anderson,* 70 Cal. 454 [11 P. 746], it is said on page 457 that "stronger evidence is required of the dedication of a neighborhood or timber road than of a thoroughfare ...; and in case of a country road than of a street in a town or city." The maintenance of gates on the roadway has been held to rebut the presumption of a dedication as a public road or highway. (*Smithers* v. *Fitch,*

*supra; Quinn* v. *Anderson, supra; Coburn* v. *San Mateo County,* 75 Fed. 520, 533; *Hibberd* v. *Mellville,* 3 Cal.Unrep. 879 [33 P. 201].) We conclude that the court's finding that the roadway in question was not dedicated as a public road or highway, is amply supported by the evidence.

For the reasons previously stated, the court did not err in refusing to grant defendants' motion for a nonsuit. Plaintiffs were entitled to an injunction to prevent a continuation of defendants' overburdening of their easement to personally travel the private roadway as a means of ingress and egress to and from their home and farm as a dwelling place and agricultural enterprise. The injunction properly issued to prevent a continuation of unlawful acts which would deprive plaintiffs of full enjoyment of their property rights and to preclude such excessive and unwarranted use of the roadway from ripening into defendants' prescriptive use thereof. (*Vestal* v. *Young,* 147 Cal. 715, 719 [82 P. 381]; *Lindsay-Strathmore Irr. Dist.* v. *Superior Court,* 182 Cal. 315, 327 [187 P. 1056].)

Finally, the appellants assert that plaintiffs, as the successors in title to the State of California, are barred under the provisions of section 315 of the Code of Civil Procedure from maintaining this action because the use of the road and the maintenance of the nudist colony by defendants existed for more than 10 years before the commencement of this action. That section is relied upon by the defendants as a statute of limitations precluding plaintiffs from injunctive relief. But the statute of limitations was not pleaded in the answer or at all. That section provides that:

"The people of this state will not sue any person for or in respect to any real property, . . ., unless—

"1. Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced; or,

"2. The people, or those from whom they claim, shall have received the rents and profits of such real property, or some part thereof, within the space of ten years."

It is contended that since the court determined in paragraph IV of the findings that defendants "Since 1934" maintained said nudist colony on their adjoining property, the state and its successors in title lost their right to enjoin a continuation to do so because more than 10 years had elapsed since its establishment on their ranch. It is true that the

state held title to and occupied and used said property for state purposes from 1920 to 1943. But during that period it maintained gates and cattle guards on said roadway, and it also "received the rents, issues and profits" from the property. Paragraph 2 of that section provides, as an exception thereto, that when the state has received rents, issues and profits from the property "within the space of ten years," the prohibition against maintaining a suit with relation thereto does not apply. Moreover, property owned by the state is held in trust for the people of the state, and may not be lost or abandoned through the negligence of its officers or agents. In *People* v. *Kerber*, 152 Cal. 731 [93 P. 878, 125 Am.St.Rep. 93], a judgment for recovery of tideland by the state, wherein the defendant denied its ownership thereof and pleaded as a defense the 10-year statute of limitations of said section 315 of the Code of Civil Procedure, was affirmed on appeal. The Supreme Court said at page 734:

". . . 'It is immaterial where the title—that is, the record title—is held, whether by the state at large, or by a county, or by some municipal department or other official body. There can be no adverse holding of such land which will deprive the public of the right thereto, or give title to the adverse claimant, or create a title by virtue of the statute of limitations. The rule is universal in its application to all property set apart or reserved for public use, and the public use for which it is appropriated is immaterial. The same principles which govern the adverse holding of a street, a public square, a quay, a wharf, a common, apply to the adverse holding of a school-house. *The public is not to lose its rights through the negligence of its agents, nor because it has not chosen to resist an encroachment by one of its own number, whose duty it was, as much as that of every other citizen, to protect the state in its rights.' This rule has been often repeated in the opinions of this court.* [Citing numerous California authorities.]'" (Italics added.)

Under the preceding authority, and upon the facts of this case, we conclude that the provisions of section 315 of the Code of Civil Procedure have no application to this case, and do not bar the maintenance of this action to enjoin the increased burden imposed by the defendants in 1943 and thereafter, upon their previously-acquired easement to personally travel the roadway for the limited purpose authorized by the court. The defendants acquired their land in 1929. Regardless of the

finding that they established the nudist colony in 1934, while the state owned the plaintiffs' property, the evidence clearly shows the burden on the easement of the road was tremendously increased in 1943 and 1944 to the unwarranted extent of 500 passing automobiles during some weeks, as Mr. Bartholomew testified. Certainly that evidence supports the judgment.

For the reasons stated, the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 13, 1948.