570 P.2d 870

Charles E. GIBBENS and Lula E. Gibbens, husband and wife, Dan T. Miller and Loretta Miller, husband and wife, Wallace R. Connolly and Eda R. Connolly, husband and wife, Don O'Kelly and Linda Lou O'Kelly, husband and wife, Bruce G. Connolly and Lanae Connolly, husband and wife, Plaintiffs-Respondents,

v.

Gustave A. WEISSHAUPT and Helen Weisshaupt, husband and wife, Fred Brusher and Margaret Brusher, husband and wife, Defendants-Appellants,

v.

AQUICULTURE GARDENS, INC., Carroll Nicholls and Kenneth Troutt, Additional Defendants-Respondents.

No. 11913.

Supreme Court of Idaho.

Oct. 27, 1977.

R. H. Copple of Davison, Copple & Copple, Boise, for defendants-appellants.

D. Blair Clark of Anderson, Kaufman, Anderson & Ringert, Boise, for plaintiffs-respondents.

Charles E. Mooney of Lyons, Mooney, Bohner & Munson, Boise, for additional respondents.

DONALDSON, Justice.

This appeal concerns the existence of a prescriptive easement and the extent of use permitted thereby. The defendants-appellants (hereinafter appellants) are the owners of a 20 acre parcel of land located between Brookside Lane, a public highway, and a 700 acre parcel of land owned by the plaintiffs-respondents (hereinafter respondents). These parcels are located approximately seven road miles generally north of Boise, Idaho. Brookside Lane is on the south boundary line and the 700 acre parcel is on the north boundary line of the 20 acre parcel. The 700 acre parcel has no frontage along Brookside Lane or any other public highway. The only means of access to the 700 acre parcel is by way of a dirt road which commences on Brookside Lane and crosses the 20 acre parcel in a northerly direction. The use of the dirt road was commenced in the early 1930's. When this use was commenced the 20 acre parcel was unenclosed by fences and uncultivated. In the 1940's the 20 acre parcel was enclosed with a perimeter fence and gates were installed across the dirt road. This fence was constructed by a Mr. Pfost who was at that time the owner of the 700 acre parcel. This fence was constructed with the permission of a Mr. Jeker, who was the then owner of the 20 acre parcel. The fence was constructed so the 20 acre parcel could be used for the purposes of a pasture. This was the first use to which the smaller tract was put.

Prior to 1970, the 700 acre parcel was used primarily as a farm, cattle ranch, and single family residence, although the extent of the operations is not clear from the record. The single family residence, farm outbuildings, and corrals were all located on the southern boundary of the 700 acre parcel, at the north end of the dirt road. From the time the use of the dirt road was commenced in the early 1930's until 1970 the road was used primarily as a means of ingress and egress for the single family

residence and for the movement of cattle, crops, and farm machinery attributable to the cattle and farming operation taking place on the 700 acre parcel. The road was wide enough to allow vehicles to pass and to "haul loads as wide as twenty-one feet." There is some evidence that the road was also used occasionally by persons attending rodeos which were held on the 700 acre parcel. At all times since the use of the road commenced in the early 1930's, the owners of the smaller parcel were aware of the use of the road by the owners of the larger parcel.

The respondents Wallace and Eda Connolly purchased the 700 acre tract in 1967. In 1970 the Connollys sold a 10 acre parcel to respondent Aquiculture Gardens, Inc. (hereinafter Aquiculture). Aquiculture constructed several greenhouses on the property and at times employed 20 to 30 people. Since 1970 the Connollys have also sold parcels to four other families who built homes upon the 700 acre parcel. The Connollys, Aquiculture and its employees, and the four families all used the dirt road for access to their property.

The appellants Weisshaupt and Brusher are the successors in interest to the Jeker family of the 20 acre parcel. The appellants Helen Weisshaupt and Margaret Brusher are sisters and members of the Jeker family. They inherited the property in the 1950's when their father died. In 1972 the appellants Weisshaupt began construction of a home on the 20 acre parcel.

Disputes arose between the Connollys and the Weisshaupts in early 1973 over the use of the dirt road. In December 1973 appellants Weisshaupt constructed a fence that limited the width of the road to twelve feet. After the appellants Weisshaupt constructed the fence along the dirt road, the respondents brought this action in district court to establish the existence of the easement and to enjoin the appellants from interfering with their use thereof. The appellants answered denying the existence of the easement and counterclaimed to quiet title.

After a trial on the merits, the trial judge found that an easement for ingress and egress existed across the appellants 20 acre parcel in favor of the respondents and their successors. The trial court held that the easement was forty feet in width where the road adjoins Brookside Lane and the respondents' property and twenty-two feet in width elsewhere. The lower court also found that the increase in use since 1970 was an increase only in degree and was not an expansion of the original prescriptive easement and did not result in increased burden upon the appellants' property. The trial judge also held that the appellants could not maintain gates across the dirt road that would obstruct the use of the easement by the respondents.

This appeal presents three issues:

(1) The existence of a prescriptive easement.

(2) The scope and extent of the prescriptive easement.

(3) Construction of gates across the easement and fences parallel to the easement.

I

*Existence of the prescriptive easement*

The trial judge held that the appellants' 20 acre parcel was subject to a prescriptive easement in favor of the respondents for access to their property. We affirm the trial judge as to the existence of a prescriptive easement. The extent and scope of the easement will be discussed under II.

In order to establish a private prescriptive easement by adverse use the claimant must submit proof of open, notorious, continuous, uninterrupted use, under claim of right, with knowledge of the owner of the servient tenement, for the prescriptive period. *Webster v. Magleby*, 98 Idaho 326, 563 P.2d 50 (1977); *West v. Smith*, 95 Idaho 550, 511 P.2d 1326 (1973). The prescriptive period in Idaho is five years. I.C. § 5–203. The general rule is that proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began raises the presumption that the use was adverse and under claim of right.

Once this is established the burden is then on the owner of the servient tenement to show that the use was permissive, or by virtue of a license, contract, or agreement. *West v. Smith, supra; Deer Creek, Inc. v. Hibbard*, 94 Idaho 533, 493 P.2d 392 (1972); *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961). This general rule fixing the presumption of adverse use and shifting the burden on to the owner of the servient estate is inapplicable where the prescriptive easement is claimed over open, wild, unenclosed, unimproved land. *Trunnell v. Ward*, 86 Idaho 555, 389 P.2d 221 (1964); *Cox v. Cox*, 84 Idaho 513, 373 P.2d 929 (1962); *Eagle Rock Corp. v. Idamont Hotel Company*, 59 Idaho 413, 85 P.2d 242 (1938).

The trial judge found that the use of the roadway by the respondents and their predecessors in interest was open, notorious, continuous, and under claim of rights since the early 1930's and that the appellants and their predecessors in interest had knowledge of such use. He further found that the appellants' 20 acre parcel was not wild, open, unenclosed, unimproved land. The trial judge thus found that the respondents had sufficiently proven each of the elements necessary to establish a prescriptive easement. We find no error in this conclusion.

The appellants claim that the trial court erred in holding that respondents had established a prescriptive easement. The appellants argue, that prior to the construction of the fence in the early 1940's, the 20 acre parcel was wild, open land thus requiring the respondents to produce some evidence other than or in addition to mere use of the roadway to establish adverseness and claim of right. The appellants argue that since the perimeter fence was constructed with the permission of the owner of the 20 acre parcel any subsequent use of the road was entirely permissive and that prior to the construction of the fence any use of the road did not deprive them or their predecessors in interest of any property right.

Neither our research nor the briefs filed in this case have disclosed authorities which clearly define wild, open, unenclosed, unimproved lands. The many cases which have relied on that principle lack precedential value because they fail to set out sufficient facts describing the land in question and the reasons for the conclusions that the lands in question were wild and open. *See generally* 46 A.L.R.2d 1140.

The trial court concluded that the appellants' 20 acre parcel should not be considered wild, open land. The servient parcel of land in question was a small tract located between a public highway and a larger improved tract of land. The distance separating the public highway from the 700 acre parcel was only some 700 feet (the length of the dirt road). Considering the size of the parcel, its location, and the surrounding property, the finding of the trial court that the 20 acre parcel was not wild and open land is supported by competent evidence and will not be disturbed on appeal. *Webster v. Magleby, supra*. This is an appropriate case to apply the principle of law that open, notorious, continuous, and uninterrupted use of the way for the statutory period raises a presumption of adverseness and claim of right, shifting the burden to the owner of the servient tenement to prove otherwise. Since the trial court concluded that the 20 acre parcel was not wild and open prior to the construction of the fence, a prescriptive easement was established before that construction. Consequently, discussion of permissive use afterwards is unnecessary. It should be noted however that the appellants did not establish that the use of the road after the construction of the fence was permissive. The evidence only discloses that permission was given to construct the fence and use the 20 acre parcel for pasturage. The evidence does not indicate that permission was given to use the property as a means of ingress and egress to the 700 acre parcel. The trial court found that any use of the roadway by the respondents and their predecessors since 1930 was under claim of right and therefore not permissive. This finding is supported by substantial and competent evidence and will not be disturbed on appeal. *Trunnell v. Ward, supra*.

We agree with the trial judge that the respondents established a prescriptive easement. We also affirm his conclusion concerning the dimensions of the roadway since this finding is supported by substantial and competent evidence.

## II

### Scope of the prescriptive easement

The trial judge found that the increase in use of the roadway since 1970 which was due to the business activities of Aquiculture and the four additional residents was not an expansion of the prescriptive easement. The trial judge held that this was merely an increase in degree and was thus permissible. The question of whether the increased use of the road amounts to an "expansion of the original easement" or merely an "increase in degree of use" is a question of law.[1] As a matter of law, this increase in use amounted to an expansion of the original easement. We disagree with the trial court and reverse this holding. Thus, a prescriptive easement exists over the appellants' property, but the easement is limited to the transportation necessary for the ingress and egress of a single family residence and the farming and cattle operations as it existed prior to 1970.

Prescription acts as a penalty against a landowner and thus the rights obtained by prescription should be closely scrutinized and limited by the courts. 2 Thompson on Real Property § 349 (1961). The quantity of use of an easement obtained by prescription is determined and fixed to the right as exercised for the full period of time required by statute. *Palmer v. Fitzpatrick,* 97 Idaho 925, 557 P.2d 203 (1976); *West v. Smith, supra; Hall v. Taylor,* 57 Idaho 662, 67 P.2d 901 (1937). As mentioned earlier the prescriptive period in Idaho is five years. I.C. § 5–203. The only use made of this roadway for the full prescriptive period was that of an access road for ingress and egress of a single family

residence and the attendant movement necessitated by the cattle and farming operations conducted on the dominant estate. The increased use of the roadway as an ingress and egress for the commercial business and the additional four residents commenced at the earliest in 1970. This action was filed in January, 1974. Thus this increased use has not occurred for the requisite five years.

There appear to be no Idaho cases dealing with this issue. We find persuasive the reasoning of the California Court in *Bartholomew v. Staheli,* 86 Cal.App.2d 844, 195 P.2d 824 (1948):

> "When an easement is acquired by prescription, the extent of the right is fixed and determined by the manner of use in which it originated. An easement acquired by prescription cannot be extended or increased so as to enlarge the burden except by grant or by adverse user which has been acquiesced in for the required statutory time. One who has acquired an easement by prescription or by grant may not use it to impose a substantial increase or change of burden on the servient tenement. [citations omitted] The scope of a prescriptive easement is determined by the use through which it is acquired. A person using the land of another for the prescriptive period may acquire the right to continue such use, but does not acquire the right to make other uses of it. [Citations omitted]." 195 P.2d 828–9.

In the *Bartholomew* case the facts indicated that from 1929 until 1943 the defendants in the action had used the roadway across the plaintiff's property for the purposes of ingress and egress to their home and farming operation. In 1943 the defendants organized and maintained a nudist colony, dude ranch, and subdivision on their property. This new business greatly increased traffic over the roadway. Suit was filed to enjoin this additional traffic in 1945. The court

---

1. *See Gaither v. Gaither,* 165 Cal.App.2d 782, 332 P.2d 436, at 438 (1958) where the court held that the use of a driveway for ingress and egress for farming and residential purposes did not as a matter of law allow the driveway to be burdened with the increased use that would be caused by the operation of a trailer park.

found that a prescriptive easement existed for the purposes of traveling to and from the defendant's property as a single family dwelling and farm, but not for the traffic caused by the resort or the subdivision.

Likewise, in *Campbell v. Winchester Realty Company*, 294 S.W.2d 919 (Ky.1956), the highest appellate court in Kentucky limited the scope of a prescriptive easement. The dominant estate in this case had been used for a livery stable and poultry business. The owners of the dominant estate, the plaintiffs, had used a passageway over defendant's property in connection with these businesses. The dominant estate was later used for a plumbing business and the passageway over the servient estate was used for customers of the new businesses and for hauling garbage. The court held that a prescriptive easement may have been established, but not for the new business. The court held that "an easement by prescription is limited by the purpose for which it is acquired and the use to which it is put." 294 S.W.2d at 920.

The authorities of other jurisdictions support the principle that the extent and scope of a prescriptive easement cannot be enlarged unless the increased use has occurred for the entire statutory period required by law. The trial court erred in finding that the respondents' prescriptive easement extended to the increase in traffic due to the business of Aquiculture and the four additional family residences. The increased use extended beyond the original prescriptive easement.

Title 7, ch. 7 of the Idaho Code allows private persons to exercise eminent domain rights to acquire by-roads for access from highways to farms and residences. Thus, our decision will not inhibit the development of property in this state or be an undue hardship on the parties in this case who commenced use of the road after 1970.

We do not mean to imply from our decision today that any increase in use of a prescriptive easement is an expansion. Our decision is consistent with §§ 478 and 479 of the Restatement of Property concerning evolution and expansion of easements.[2] Rights obtained by prescription should be strictly limited, and we read these sections of the Restatement narrowly. We are aware that some changes in the character of the dominant estate are foreseeable and will necessitate changes in the use of a prescriptive easement. We emphasize, however, that any changes in the use of a prescriptive easement cannot result in an unreasonable increased burden on the servient estate and that the increase in use must be reasonably foreseeable at the time the easement is established.

We may illustrate this point by example. The respondents Wallace and Eda Connolly purchased the dominant estate in 1967. The respondents leased portions of their property for pasturage and cattle were hauled over the roadway in question. Any increase in use caused by these leasing operations would not be an expansion of the easement, merely a permissible increase in degree of use. The original easement contemplated the operation of a cattle ranch and the further development of this cattle ranch would be foreseeable. Also this additional use would not amount to an unreasonable increased burden because of the infrequency of the trips.

2. "§ 478. Factors in Ascertaining Extent of Easements Created by Prescription.

In ascertaining whether a particular use is permissible under an easement created by prescription a comparison must be made between such use and the use by which the easement was created with respect to
(a) their physical character,
(b) their purpose,
(c) the relative burden caused by them upon the servient tenement."

"§ 479. Extent of Easements Appurtenant as Affected by Evolution of the Dominant Tenement.

In ascertaining whether a particular use is permissible under an easement appurtenant created by prescription there must be considered, in addition to the factors enumerated in § 478, the needs which result from a normal evolution in the use of the dominant tenement and the extent to which the satisfaction of those needs increases the burden on the servient tenement."

## III

*Construction of gates across the easement*

The trial court held that the appellants could not maintain gates to obstruct the use of the easement by the respondents. The appellants cite this as error believing that this will force them to fence the entire roadway or if they do not it will deprive them of the reasonable use of their property. The respondents answer this specification of error by stating that the trial judge's finding did not prohibit gates per se, but only those that would obstruct the easement. The trial judge's order could be construed either way. We hold that gates are not prohibited per se but cannot be constructed or maintained in such a way as to interfere with the use of the roadway by the respondents.

The facts indicate that gates were constructed and used across the easement from the time the fence was constructed in the early 1940's. These gates were used for controlling livestock. The construction and maintenance of these gates is a reasonable condition to impose upon the use of the easement. *City of Bellevue v. Daly,* 14 Idaho 545, 94 P. 1036 (1908). Any gates constructed on the easement must be easy to open and of sufficient width.

The owner of an easement has the right and duty to maintain, repair, and protect the easement. *Suitts v. McMurtrey,* 97 Idaho 416, 546 P.2d 62 (1976); *Rehwalt v. American Falls Reservoir District No. 2,* 97 Idaho 634, 550 P.2d 137 (1976); *City of Bellevue v. Daly, supra.* The owner of the servient estate has no duty to maintain the easement. *Suitts v. McMurtrey, supra; Kirk v. Schultz,* 63 Idaho 278, 119 P.2d 266 (1941). This duty requires that the easement owner maintain the easement so as not to create an additional burden on the servient estate. In *City of Bellevue,* this Court held that it was the obligation of the easement owner to fence and protect the easement. The Court reasoned that the

owner of the land subject to the easement should not be deprived of the use of his land as pasturage because of the existence of the easement. The Court also held that it was not the servient landowner's duty to protect the easement. It would seem proper in this case to require the respondent, the owners of the dominant estate, to absorb the cost of constructing and maintaining any gates necessary to protect the easement and to allow the appellants reasonable use of their land as pasturage.

## Conclusion

A prescriptive easement exists across the appellants' 20 acre parcel. The scope and extent of the easement is limited to the ingress and egress necessitated by a single family residence and the cattle and farming operation as it existed prior to 1970 including any increase in use due to the development and expansion of the cattle and farming operations. The respondents, Aquiculture, Gibbens, Miller, O'Kelly, and Bruce and Lanae Connolly can proceed in district court to establish a right of way to their property. If necessary, they can also seek a preliminary injunction to enjoin the appellants from preventing their use of the road during the pendency of this suit. Gates can be constructed across the easement, but not in such a way as to prevent respondents from using the roadway. The respondents are obligated to absorb the cost of constructing and maintaining these gates. Fences may also be constructed along the edge of the easement by the appellants at their own expense.

Judgment affirmed as modified. No costs allowed.

McFADDEN, C. J., and BISTLINE, J., concur.

SHEPARD, J., concurs in parts I and III and dissents as to part II.

HAGAN, D. J., sat but did not participate.