702 P.2d 777

Robert Scott WOOD and Luann Wood, husband and wife; Gregory H. Wood and Helen B. Wood, husband and wife; Robert Scott Wood, Gregory H. Wood and Glenda Lent, as co-personal representatives of the estate of Wanda Wood, Plaintiffs-Respondents,

v.

BROWN INCORPORATED, an Idaho corporation; George Brown and Carol Brown, husband and wife; Gordon Smith, Defendants-Appellants.

No. 15556.

Supreme Court of Idaho.

May 7, 1985.

Jay H. Stout, Blackfoot, for defendants-appellants.

G. Rich Andrus, Rexburg, for plaintiffs-respondents.

SHEPARD, Justice.

This is an appeal from a judgment wherein the district court decreed a prescriptive easement over the property of defendants-appellants Brown for the use of certain parcels of land owned by plaintiffs-respondents Wood. We affirm.

Plaintiffs Wood own and farm tracts of land of differing acreages and shape in what has been, until recently, a somewhat remote area lying in bench lands east of Rexburg, Idaho. In that area a creek has formed a substantial canyon, and access to some of the Woods' property is somewhat difficult because of the precipitous sides of the canyon. Historically, access to the Woods' lands has been by means of a road traversing the Browns' lands, which lands lie generally north of the Woods' parcels and within a more narrow portion of the canyon. Ultimately that road joins with a public road.

The Woods' parcels of property are varied in their histories, some having passed down through the Wood family, and some having been purchased from persons outside the family, and some having been purchased from the State of Idaho at various times.[1]

There appears no question but that the road traversing the Brown property (Brown Road) has been used as access for what are now the Wood properties for different purposes at different times. The dispute between the parties was whether a prescriptive easement over the Brown Road had been acquired for the benefit of each of the 12 properties of the Woods';

---

1. We note that, although the particular history of each parcel is determinative of plaintiffs' right to a prescriptive easement, the evidence of ownership and use of each parcel is scattered through the record and transcript and is not readily accessible, making the case somewhat confusing. We have done our best to synthesize it, as follows:

   *Parcel 1:* Purchased from the State by David Strouss in 1978, by land certificate assigned to Scott and LuAnn Wood on June 14, 1982.

   *Parcel 2:* Purchased by Scott Wood from the State by land sale certificate on April 15, 1981.

   *Parcel 3:* Purchased by LuAnn Wood from the State by land sale certificate on April 15, 1981.

   *Parcel 4:* Leased from the State by Walter Wood on January 1, 1964. Purchased from the State by Walter Wood by land sale certificate on February 8, 1974. Assigned to Scott Wood on May 9, 1975.

   *Parcel 5:* Leased from the State by Walter Wood on January 1, 1964. Purchased by Walter Wood in 1974. Assigned to Scott and Greg and their wives on May 9, 1975. Divided by Scott and Greg and their spouses on January 3, 1975.

   *Parcel 6:* Part of this parcel was homesteaded by Henry Wood in around 1900. The rest was leased from the State by Henry Wood in about 1900. Lease assigned to another Henry Wood, an uncle of plaintiffs', upon the death of plaintiffs' grandfather, Henry Wood. Reference to Henry Wood herein will mean plaintiffs' grandfather. Lease sold to Glen Wood in about 1954. Glen farmed it until his death in 1967. Leased portion purchased from the State after Glen's death by Glen's wife, Wanda, in November 1967. Wanda sold parcel 6 to Scott Wood and his wife in 1980.

   *Parcel 7:* Part of this parcel was purchased from the State by Wanda Wood in 1967 and probably had been leased by Henry Wood prior to that time. Remainder of parcel was original homestead of Henry Wood. The parcel was sold by Wanda to Greg Wood and his wife in 1980.

   *Parcel 8:* Original McArthur Homestead. Purchased by Walter Wood in 1937. Walter Wood sold it to Scott Wood in 1975.

   *Parcel 9:* Part of original McArthur Homestead. Purchased by Walter Wood in 1937. Walter Wood sold it to Greg Wood in 1975.

   *Parcel 10:* Purchased in 1960 from the State by Glen Wood, who had leased the property from the State before that. After Glen's death in 1967, Greg and Scott farmed the parcel for their mother. In 1980, Greg and Scott began leasing the property from their mother, who died May 8, 1983. The parcel was in probate at time of litigation and apparently was to pass to plaintiffs upon completion of probate.

   *Parcel 11:* Prior to 1981, this parcel had been leased from the State by other farmers, not here involved, named Jeppesen and Widdison. Greg Wood purchased it from the State in 1981.

   *Parcel 12:* Part of Henry Wood's original 1900 homestead. Purchased by Greg Wood from Wanda Wood in 1975.

   The trial judge granted plaintiffs a prescriptive easement as to all parcels except parcels 1, 2, 3 and 11.

*i.e.,* whether the Woods' use of the Brown Road was founded in prescription or was by permission, for what period of time the road had been used by the Wood family, and the degree and purposes for which the Woods and their predecessors in title had used the road.

The Woods brought the instant action, seeking the declaration of an easement by prescription over the Brown land for the benefit of all 12 of the parcels of land owned by the Woods. Following trial, the court held that the Woods had established the existence of a prescriptive easement over the Brown lands. However, the court held further that an easement by prescription had been established benefiting only eight of Woods' parcels. As to the remaining four of the Woods' parcels, the court found that the Woods had failed to establish a prescriptive easement. The trial court further held and ordered that the Browns should, with the cooperation of the Woods, establish regulations within certain court-designed guidelines for the quantity and type of usage of the road by the Woods. The Browns appeal from the judgment and orders of the district court. The Woods have not cross-appealed.

▪ In approximately 1900, Henry Wood (grandfather of plaintiffs) homesteaded certain lands in Madison County, which lands came down through his family to the eventual ownership of plaintiffs Wood herein. Henry Wood also farmed certain other lands adjacent to his homestead, which other lands he leased from the State of Idaho. Following Henry Wood's death, his wife purchased that formerly leased property. The testimony appears clear that Henry Wood and his descendants commonly utilized the Brown Road for access to the Wood property. It is not substantially disputed that the Woods used the Brown Road, but rather the Browns dispute the type and frequency of such use and contend that the use was founded in permission.

There is substantial testimonial evidence, albeit controverted, that the Woods' usage of the Brown Road was founded and con-tinued in prescription rather than in permission, and that the existence of the Brown Road and the usage of that road by the Woods' predecessors predated the acquisition of the land by the Browns' predecessors in interest. The evidence further supports the finding of the trial court that the Woods and their predecessors in interest have used the road since 1937 openly, notoriously, continuously, without interruption, under a claim of right, with the actual or constructive knowledge of the Browns and their predecessors in interest, thus satisfying the required prescriptive period of five years. Since those findings of the trial court are supported by substantial, albeit conflicting, evidence, they will not be disturbed on appeal.

▪ Defendants-appellants Brown assert that the trial court erred in considering as a portion of the requisite five-year prescriptive period the time during which the Woods' predecessors in interest leased those particular parcels of land from the State, prior to their purchasing them. We disagree with this assertion. We hold that the trial court was correct in its ruling that the use of the lessee can be tacked to that of the landlord for purposes of establishing adverse possession. Put another way, the occupation of the leased premises by the lessee is constructively that of the landlord. As stated by Powell in his treatise on real property:

"Successive periods of adverse, continuous and uninterrupted use may be added together to make up the required period of prescription, if there has been privity between the users. The requisite privity exists when the later user has succeeded to the interest of the earlier user by inter vivos conveyance, by descent, by devise, or by such an involuntary conveyance as occurs on execution sale or on bankruptcy. The requisite privity also exists when the successive uses are all made under a common title, as for example, by a tenant and his landlord, or by a life tenant and the remainderman, whose interests were created by one conveyance. Since the periods to be tacked

must all be adverse, continuous, and uninterrupted, a period during which the dominant and servient parcels were under the same ownership cannot be included. Nor may there be any period during which the use was permissive. There is some authority that where a later user seeks the benefit of his grantor's (or devisor's) earlier use, he must show that this benefit was intended to pass to him. The better view is that the succession in possession of the claiming dominant tenement suffices, without more."

3 Powell on Real Property, para. 413, pp. 34–133–34–134 (1984).

*Accord* Restatement of Property § 464 (1944); Burby on Real Property § 111, pp. 274–275 (3d ed. 1965); *First Nat. Bank of Marshall v. Beavers*, 602 S.W.2d 327 (Tex. Civ.App.1980); *Brown v. Redfern*, 541 S.W.2d 725 (Mo.App.1976); *Swygert v. Roberts*, 136 Ga.App. 700, 222 S.E.2d 75 (1975). *See also, Berg v. Fairman*, 107 Idaho 441, 445, 690 P.2d 896, 901 (1984) (Huntley, J., dissenting).

▇▇ The Browns next assert that the trial court erred when it held that the Browns, as the owners of the servient estate, should make reasonable regulations concerning the Woods' use of the easement over the Brown Road, and specifically as to "the size of trucks, speed, minimizing of dust, and maintenance." The trial court stated:

"No evidence has been presented from which this court can make regulations for the parties. The court, therefore, expects the parties to reach agreement concerning the reasonable regulations to be imposed. The plaintiffs have an express obligation to avoid changes in the use of the prescriptive easement so that an unreasonably increased burden will not be placed on the servient estate. It is apparent to the court that there was no problem between the parties concerning the use of the easement until the time that the farming practices of the plaintiffs changed. A compassionate regard for the interests and needs for each of the parties that is reflected in reasonable regulations that are scrupulously complied with will avoid many problems in the future for the parties herein.

\*    \*    \*    \*    \*    \*

"Neither the court nor the defendants have the right to dictate to the plaintiffs concerning the crops that they shall raise. However, the owner of the servient estate traversed by the prescriptive easement does have the right to make reasonable regulations concerning the use of the easement."

Clearly, the trial court believed that insufficient evidence had been presented upon which the court could prescribe the detailed usage which the Woods would be permitted to make of the prescriptive easement. The trial court apparently believed that the parties, as reasonable people, should be able to agree upon such details between themselves. We recognize that after the prolonged litigation, there may be substantial difficulties in the parties' arriving at such an agreement. However, we also note that the record contains no showing that such an agreement has been attempted. Therefore, we affirm the order of the trial court in this regard, noting that upon an adequate showing of the inability of the parties to agree, the trial court has implicitly retained jurisdiction for the purpose of taking additional evidence upon which it might, if required, set forth detailed and specific regulations for utilization of the prescriptive easement by the Woods. *Aztec Ltd., Inc. v. Creekside Inv. Co.*, 100 Idaho 566, 602 P.2d 64 (1979), and *Gibbens v. Weisshaupt*, 98 Idaho 633, 570 P.2d 870 (1977), are informative in this regard. We additionally note, as above mentioned, that plaintiffs Wood have not cross-appealed from this or any portion of the trial court's disposition of the cause.

We have examined defendants Browns' remaining assignments of error and find them to be without merit. The trial court's disposition of the cause is affirmed, subject only to possible reopening of the cause, as

set forth above. No costs or attorney's fees on appeal.

DONALDSON, C.J., HUNTLEY, J., and McFADDEN, J., Pro Tem., concur.

BAKES, Justice, concurring in the result in part:

I concur in the result of much of the majority opinion, but would remand this matter forthwith to the trial court to enter a final decree setting out precisely the extent and duration of the easement which the trial court has created by its judgment. To date there is only an amorphous order which cannot become a final judgment until the trial court fixes precisely the nature and extent of the easement granted.

While it may have been appropriate for the trial court to attempt to give the parties time to work it out, no purported final judgment should have been entered until either the parties had settled the nature and extent of the easement or, having failed to do so, the trial court had done so.