78 P.3d 389

**Robert L. LOVITT and Judy Lovitt, husband and wife, Plaintiffs–Appellants–Cross Respondents,**

v.

**Robert W. ROBIDEAUX, Karen B. Robideaux, husband and wife; Robert Robideaux, Cherie Robideaux, husband and wife; and Brian Claypool, Shaani Claypool, husband and wife, Defendants–Respondents–Cross Appellants.**

No. 28191.

Supreme Court of Idaho,
Boise, April 2003 Term.

Sept. 29, 2003.

Harvey Richman, Coeur d'Alene, for appellants.

Lukins & Annis, Coeur d'Alene, for respondents. Edward W. Kok argued.

KIDWELL, Justice.

The Lovitts appeal, and the Robideauxs cross appeal, from the district court's conclusion that it could not determine the littoral rights of either party and that the Robideauxs may not limit the nature and scope of a prescriptive easement by means of a locked gate. The judgment of the district court is affirmed.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Robert and Judy Lovitt (Lovitts) own Lot 111 of the Hayden Lake Cottage Tracts on Hayden Lake, Kootenai County, Idaho. Robert and Karen Robideaux (Robideaux) own Lots 112, 113, and 114 of the Hayden Lake Cottage Tracts. Lots 111 and 112 are adjacent. The lots are located on a "V" shaped bay called Lee's Bay. At its mouth, Lee's Bay is approximately 400 feet wide. Except where a sandbar extends across the mouth of the bay creating shallower water, Lee's Bay is approximately fifteen feet deep. The depth of the water above the sandbar is unknown, but changes with the water level of the lake. The mouth of Lee's Bay opens to the north and the bottom of the "V" shaped bay points south. Lot 111 is located on the northwestern shore of Lee's Bay. As a result, part of the Lovitts' shoreline property faces the bay and part faces the open lake. Lots 112, 113, and 114 are to the southeast of Lot 111, along the western shore of the "V" shaped Lee's Bay. Thus, all of the Robideaux shoreline property faces the bay.

Idaho law requires a permit to build a dock (referred to as "navigational encroachments" under the law). The Idaho Department of Lands (Department) issues and regulates permits. The Lovitts and the Robideauxs each possess a permit for a dock, issued by the Department.

The Lovitts' dock sits at a right angle to the shoreline located on the portion of Lot 111 facing Lee's Bay. The dock was built pursuant to encroachment permit ERL–95–S–1403A, which the Department transferred to the Lovitts from the Lovitts' predecessors. The Lovitts claim their predecessors placed the dock at this location in the 1940's.

The history of the Robideauxs' dock permit is less straightforward. The record and the briefs do little to clarify.

When the Robideauxs purchased Lot 112 on January 3, 1977, their predecessors already had a dock off of Lot 112. The Robideauxs' predecessors possessed a permit for the dock, described as a single slip floating dock (permit ERL–95–S–1530). After the Robideauxs purchased Lot 112, they relocated the dock from Lot 112 to the water off the point of the Lovitts' property (point dock), with the Lovitts' permission. The point dock was located to the north of the Lovitts' dock, so it extended near the mouth of Lee's Bay, floating above the sandbar. There was conflicting testimony at trial as to when the point dock was moved to the point, but it occurred sometime between 1977 and 1981. Around the same time the point dock was moved to the point, the Robideauxs had another dock built and placed off of Lot 112. As a result, the Robideauxs had two docks, but only one permit, which was still in their predecessor's name.

Both families used the point dock until the Lovitts revoked permission for the Robideauxs to maintain it off of the point of Lot 111. The Lovitts and Robideauxs had a falling out sometime in 1993 when the Robideauxs placed pilings into the lakebed off the point of the Lovitts' property. Pilings, like docks, are considered navigational encroachments and require permits. The Robideauxs did not have a permit to install pilings. The pilings were placed north (lake side) of the sandbar, slightly north and west of the point

dock. The Robideauxs installed the pilings under the belief they owned a "littoral right" (a right to access navigable waters) in the area where the pilings were placed. On January 15, 1993, prior to installing the pilings, the Robideauxs received a transfer of their predecessor's encroachment permit ERL–95–S–1530, which was the renumbered L–95–S–1530A. This permit was used by the Robideauxs' predecessors for the dock that became the point dock.

On July 23, 1997, after several years of discussion with the Department regarding their dock situation, the Robideauxs obtained another encroachment permit from the Department. This permit had the same number, L–95–S–1530A, as the permit transferred to the Robideauxs from their predecessors on January 15, 1993. According to the July 23, 1997, permit, it was issued for an anchored dock and shore ramp to be located on Lot 112. The shore ramp to this dock was planned to go directly over the Lovitts' dock. It also appears from the record that the Robideauxs never moved the point dock after the dispute with the Lovitts began and this permit was sought to cover the point dock. It is unclear why the Robideauxs sought a second permit after they had their predecessor's permit transferred to them. It is also unexplained why the Department issued a second dock permit to the Robideauxs with the same identification number as the permit transferred to them in 1993. While the permits have the same number, they identify two completely different docks. There is no indication the second permit supersedes or nullifies the first.

The Department enclosed a letter with the July 23, 1997, dock permit notifying the Robideauxs the permit was not valid until the pilings were removed from Hayden Lake. The letter further stated if the pilings were not removed within 30 days, the permit would be suspended or revoked. Carl Washburn (Washburn), a navigable waters specialist with the Department, testified at trial that the Department stayed any decision regarding removal of the pilings until this litigation was finalized. Aerial photos from August 2000 indicate the three pilings remained in place at that time. However, at oral argu-

ment counsel for both parties stated the pilings have since been removed.

Along with the dock issue, the parties raise an issue involving a prescriptive easement across the Robideauxs' property. There is a recorded easement crossing the Robideauxs' property. The recorded easement crosses Lots 112 and 113, providing a main roadway and access to Lot 111 and all lots west. The Lovitts do not use the main roadway for access to their lot. Rather, the Lovitts use a separate driveway that branches from the main roadway at Lot 113 and crosses Lots 113 and 112 in order to access their Lot 111. The separate driveway is not part of the recorded easement and an easement has never been expressly granted for the separate driveway. The district court found the Lovitts and their predecessors in interest have used the separate driveway since at least 1944 as a means to access Lot 111. After the Lovitts revoked permission for maintenance of the point dock, the Robideauxs informed the Lovitts they could no longer use the separate driveway unless the Lovitts abided by the Robideauxs' condition of keeping a locked gate across the separate driveway.

On January 22, 1997, the Lovitts filed suit against the Robideauxs seeking: (1) a declaratory judgment establishing the littoral rights of both parties; (2) a mandatory injunction requiring the Robideauxs to remove the pilings; (3) a permanent injunction preventing the Robideauxs from future infringement on the Lovitts' littoral rights or interference with the Lovitts' access to the driveway; and (4) to quiet title in the separate driveway by means of a prescriptive easement. On March 14, 1997, the Robideauxs answered and filed a counterclaim alleging the Lovitts' dock encroached on the Robideauxs' littoral rights. The Robideauxs sought: (1) to quiet title to the location of their dock; (2) to require the Lovitts to relocate their dock so it does not interfere with the Robideauxs' shore ramp; and (3) to allow the Robideauxs to limit the nature and use of the easement, if any, by means of a locked gate.

On March 13, 2001, the district court conducted a bench trial. On June 15, 2001, the district court entered Findings of Fact and Conclusions of Law. The district court concluded neither party provided enough evidence regarding the ordinary high water mark to establish littoral rights. Additionally, the district court concluded since the parties failed to exhaust their administrative remedies before the Department or make the Department a party to the case, the district court was without authority to adjudicate their rights under the permits. The district court also concluded the Lovitts established an easement by prescription for the driveway they used to access Lot 111 and the Robideauxs could not limit the nature and use of the easement by means of a locked gate. On January 16, 2002, the district court issued a final judgment consistent with its findings.

The parties timely filed this appeal and cross appeal.

## II.

## STANDARD OF REVIEW

 This Court will set aside a trial court's findings only if they are clearly erroneous. I.R.C.P. 52(a) (2002); *McCray v. Rosenkrance*, 135 Idaho 509, 513, 20 P.3d 693, 697 (2001); *In re Williamson v. City of McCall*, 135 Idaho 452, 454, 19 P.3d 766, 768 (2001). To decide whether findings of fact are clearly erroneous, this Court must determine whether the findings are supported by substantial, competent evidence. *In re Williamson* at 454, 19 P.3d at 768. Evidence is substantial and competent if a reasonable trier of fact would accept it and rely on it. *Id.* Findings based on substantial, competent evidence, even if conflicting, will not be disturbed on appeal. *Bolger v. Lance*, 137 Idaho 792, 794, 53 P.3d 1211, 1213 (2002).

This Court exercises free review over conclusions of law. *Id.*

## III.

## ANALYSIS

A. **The District Court Did Not Err In Concluding It Could Not Review Or Adjudicate Any Rights Of The Parties Under Any Navigational Encroachment Permits Issued By The Department Because The Parties Failed To Exhaust Their Administrative Remedies.**

 The Lovitts argue this Court should determine the littoral rights of each party

and decide the point dock infringes upon their littoral right. The Lovitts contend the decision should not be left to the Department because the losing party will inevitably appeal, which will only bring the parties back to this Court.

The Robideauxs claim the real dispute, the granting of a dock permit, has been over for some time and has not been appealed. The Robideauxs also claim the Department can issue encroachment permits without considering littoral rights. According to the Robideauxs, the only limitation on the Department's power to issue dock permits affected by littoral rights is in the giving of notice. The Robideauxs, however, assert there is no opportunity to contest the granting of permits in this case.

The Idaho Legislature enacted Chapter 13 of Title 58 in 1974 as part of the Lake Protection Act (Act). Chapter 13 concerns "Navigational Encroachments." After enactment of Chapter 13, any encroachment placed on navigable waters requires approval in a manner consistent with the Act. I.C. § 58–1301. "Encroachments in aid of navigation" or "navigational encroachments" refer to docks, piers, pilings, boat ramps, and such aids to navigating a lake. I.C. § 58–1302(i). Any party wishing to build or use a navigational encroachment must submit an application for a permit to the board of land commissioners (board), the body within the Department, that issues or denies permits. I.C. § 58–1303.

Generally, the board should approve a permit application unless the proposed encroachment infringes, or may infringe, upon the littoral rights of an adjacent property owner. I.C. § 58–1305(a). The initial determination of possible infringement is made based on the plans the applicant provides. I.C. § 58–1305(b). Littoral rights, for purposes of issuing dock permits, refer to the right of owners of land next to the navigable waters of a lake to maintain their adjacency to the lake and make use of their right by building or using navigational encroachments. I.C. § 58–1302(f). If it appears infringement may occur, the applicant shall either obtain written consent from the adjacent property owner or provide notice of the application by means of personal service or certified mail. I.C. § 58–1305(b). A non-consenting adjacent property owner has ten days from the date of notice to file an objection. Id. If an objection is filed, the board shall set a time and place for a hearing so the applicant and objecting party may present evidence in support of their position. I.C. § 58–1305(c). The board shall render a decision after the hearing. Id. Either party may seek judicial review of the board's decision from the district court by appealing within 30 days. I.C. § 58–1306(c).

In addition to the requirement for a permit for any new navigational encroachment, a permit holder is required to obtain approval to replace, enlarge, or extend an existing encroachment. IDAPA 20.03.03.020.03 (1997).

The Act clearly governs the issuance of navigational encroachment permits in the state of Idaho and is the starting point for any analysis regarding infringement on littoral rights based on the placement of a dock pursuant to a permit. See I.C. § 58–1301. Under the Act, owners of property next to a navigable lake, such as the Robideauxs, can apply for a permit in order to construct a dock so they can reach navigable waters. Contrary to the Robideauxs' contention, issuance of a dock permit under the Act necessarily contemplates determination of littoral rights as defined by the Act. A permit and littoral rights are not necessarily separate and distinct. A holder of a valid permit cannot locate a dock in a manner that infringes upon an adjacent landowner's littoral right. In the context of obtaining a permit and locating a dock, the Act clearly contemplates the Department's role in determining littoral rights by requiring written consent from, or notice to, adjacent landowners if a proposed permit even appears to infringe on the adjacent landowner's littoral rights. The Department's regulations require consent or notice whether for approval of a new encroachment or replacement, enlargement, or extension of an existing encroachment. Thus, when called upon, the Act allows the Department to determine the littoral rights of adjoining riparian landowners when there is a dispute regarding placement of a dock

pursuant to a permit and possible infringement of those rights.

The undisputed facts in the record show the Department issued a permit to the Robideauxs on July 23, 1997, for a ramp and floating dock with an anchor system. The plans submitted by the Robideauxs indicated they intended to anchor this dock in the area next to the pilings installed off the point of the Lovitts' property. The question then becomes whether placement of this dock would, or appears to, infringe on the Lovitts' littoral rights. If so, the Act required the Robideauxs either to obtain written consent for the dock's placement from, or provide notice of their application to, the Lovitts. Based on the exhibits provided at trial, it is evident the Robideauxs' proposed placement of the dock would, at very least, appear to infringe on the Lovitts' statutory littoral rights. The proposed ramp would go directly over the Lovitts' existing dock, a fact that led the Robideauxs to ask the district court to require the Lovitts to move their dock. As a result, the Robideauxs had an obligation to obtain written consent or provide notice to the Lovitts so they could choose to request a hearing before the Department.

■ It is undisputed the Robideauxs never obtained the Lovitts' consent for the dock. The Lovitts also claim they never received notice. There is nothing in the record to indicate the Lovitts received notice of the Robideauxs' permit application. Washburn testified the Department had no record of notice to the Lovitts regarding the Robideauxs' permit application. The Robideauxs claim the Lovitts knew about the dock. While the Lovitts undoubtedly knew about the dock, awareness of a dock does not satisfy the requirements set forth by the Idaho Legislature. The Robideauxs were obligated by I.C. § 58–1305(b) to either obtain written consent or provide notice of their permit application before the Department could issue a permit for a dock to be placed at the point of the Lovitts' property. Otherwise, the Lovitts would not be afforded the right granted by the Act to object and seek a hearing in front of the Department.

There is no Idaho authority suggesting a party waives its right to an administrative hearing to which it is entitled if not apprised of the facts giving rise to the right at issue. Without written consent from, or notice to, the Lovitts as required by the Act, the Department could not have validly issued the Robideauxs a permit on July 23, 1997. The Robideauxs urge this Court to affirm the validity of their permit while completely denying the Lovitts their due process right to object. This argument lacks merit.

■ In contrast, the Lovitts argue they should not be required to return to the Department because no matter the outcome, the unsuccessful party will appeal. Rather, the Lovitts ask this Court to establish the parties' respective littoral rights, which includes invalidating the Robideauxs' current navigational encroachment permit. However, the Robideauxs, as riparian landowners, have a littoral right on Hayden Lake. *See West v. Smith,* 95 Idaho 550, 511 P.2d 1326 (1973) (recognizing riparian landowners, as an incident to their ownership, have unobstructed access to the navigable waters along all points of their riparian land). The Act dictates the process by which the Robideauxs may seek a permit for a dock. The Department, based on its experience and expertise, is in the best position to determine the proper placement of docks based on the requirements of the Act and the parties' respective littoral rights. Under the Act, the Department may determine whether a proposed dock infringes upon a neighbor's littoral right.

It is important to note that the Lovitts, in their appellant's brief, frame the issue on appeal as whether the district court erred in concluding neither party satisfied the requirements to establish littoral rights because they failed to provide enough evidence. The district court's one and only conclusion on that issue was that: "[t]he ordinary high water line, mark, or level has not been proven and for that reason the court cannot determine the respective littoral rights of the parties." It would be simple for this Court to settle this appeal on that issue. The record is devoid of any evidence of the ordinary high water mark, which is necessary to establish a littoral line. *See Idaho For. Indus., Inc. v. Hayden Lk. Watershed Imp.*

*Dist.,* 733 P.2d 733, 737, 112 Idaho 512, 516 (1987). However, the district court also concluded it lacked authority to adjudicate the rights of either party under the permits issued by the Department. A reading of the complaints, cross-complaints, and briefs in this case make it clear that the real remedy sought is where the parties may place their docks pursuant to a permit issued by the Department. Identification of the littoral line between Lot 111 and Lot 112 is only the first step in the solution the Lovitts and Robideauxs seek.

This Court would be delinquent in its duties if it failed to address the actual issues on appeal, even if they are not clearly articulated. These parties have been at odds with one another over the placement of their docks for ten or more years. Part of the reason for this drawn out litigation is the Department's willingness to stay its decision regarding infringement until the outcome of this case. There is nothing in the Act that authorizes the Department to "stay" its actions. The legislature clearly contemplated the Department's ability to determine littoral rights when infringement issues arise due to the planned placement of a dock. As a result, these parties failed to exhaust their administrative remedies.

The district court, in Conclusions of Law, also stated that "the ordinary high water line, mark, or level has not been proven and for that reason the court cannot determine the respective littoral rights of the parties." (citations omitted). It should be noted that the parties may, if they desire, submit evidence of the ordinary high water mark at an appropriate administrative hearing.

While the Department may determine littoral rights under these limited circumstances, nothing in this opinion should be read to divest the district court of its jurisdiction to determine littoral rights, a common law right. Riparian landowners, for various reasons, may wish to seek a judicial determination of their littoral rights independent of, or prior to, any infringement issues that may come up in the course of obtaining a dock permit from the Department.

## B. The District Court Did Not Err In Concluding The Robideauxs May Not Limit The Nature And Scope Of The Prescriptive Easement By Means Of A Locked Gate.

The Robideauxs argue the Lovitts failed to make a showing that the gate was unreasonable or unduly restrictive. As a result, the Robideauxs claim the district court's conclusion that they could not limit the nature and scope of the easement was in error and they should be allowed to install a gate that is easy to open and wide enough to accommodate the Lovitts' use.

"[A]n easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Viebrock v. Gill,* 125 Idaho 948, 952, 877 P.2d 919, 923 (1994) (citing *Abbott v. Nampa Sch. Dist. No. 131,* 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991)). According to this Court's decisions, the owner of a servient estate may construct a gate across an easement to limit use of the easement to only those who have a right to use it. *Marshall v. Blair,* 130 Idaho at 682, 946 P.2d at 982 (citing *Gibbens v. Weisshaupt,* 98 Idaho 633, 570 P.2d 870 (1977); *Wood v. Brown,* 108 Idaho 739, 702 P.2d 777 (1985)). Use of a gate, or any other method of regulating an easement, by the owner of the servient estate must, however, be reasonable. *See Wood v. Brown,* 108 Idaho at 742, 702 P.2d at 780.

The district court, in Conclusions of Law, also stated:

> [T]he maintenance of a gate across the disputed driveway or roadway as contended for by the Robideaux's is unreasonable and unduly restrictive of the Lovitts' right of access under the circumstances.... [M]aintenance of the gate by Robideaux's is in the nature of a spite structure and as a result of the dock dispute between the parties, rather than for security purposes as alleged by Mr. Robideaux.

The evidence presented at trial showed that the Robideauxes use of a gate across the easement was unreasonable and unduly restrictive under the circumstances because the Robideauxs chose to begin using the gate in

an effort to spite the Lovitts. Neither the Robideauxs, nor their predecessors, since 1944, saw any security need to gate the driveway at issue until the dock dispute arose. The record indicates the driveway leads to Lot 111 and Lot 110 only. There is no evidence in the record, or claim, to suggest any party other than the Lovitts regularly use the driveway. Therefore, substantial, competent evidence supports the district court's finding that the Robideauxes use of a locked gate was unreasonable.

## IV.

## CONCLUSION

We affirm the district court's decision that it could not determine the parties' littoral rights and that the parties failed to exhaust their administrative remedies. There is substantial, competent evidence to affirm the district court's finding that the Robideauxs may not limit the nature and scope of the Lovitts' prescriptive easement across Lots 113 and 112 by means of a locked gate. Neither party requested attorney fees on appeal. No costs are awarded.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and EISMANN concur.