179 P.3d 336

**Joseph E. BENNINGER and Edith I. Benninger, husband and wife, Plaintiffs–Respondents,**

v.

**Thomas E. DERIFIELD, a single person, and Julie Freed, a single person, Defendants–Appellants.**

No. 33408.

Supreme Court of Idaho, Boise, February 2008.

Feb. 19, 2008.

374

Finney, Finney & Finney, P.A., Sandpoint, for appellants.

Winston & Cashatt, Coeur d'Alene, for respondents.

BURDICK, Justice.

This case concerns the scope of a prescriptive easement. Appellants appeal from the district court's determination of the scope and argue the declared scope of the easement exceeds its historical use. We affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2002 Respondents Joseph and Edith Benninger (the Benningers) filed a complaint against Appellants Thomas Derifield and Julie Freed (collectively Derifield) to quiet title to their alleged easement rights over Derifield's property. The district court concluded the Benningers had a twelve foot wide express easement over Derifield's property. This Court reversed the district court's decision and held there was no express easement but that the Benningers did have a prescriptive easement; we remanded to determine the scope of the prescriptive easement. *Benninger v. Derifield*, 142 Idaho 486, 490–91, 129 P.3d 1235, 1239–40 (2006).

The facts underlying the easement claim were set forth in the initial appeal:

The Benningers purchased Lot 3 of Garfield Bay Addition No. 2, in Bonner County in 1967 and built their home on Lot 3. Derifield purchased Lots 4 and 5 which are adjacent to the Benninger property in 2000. Derifield's home is located on Lot 4. A driveway which crosses the Derifield property and ends on the Benninger property provides the only road access for the Benningers to West Garfield Bay Road, a county road. The driveway has been in existence and use from before the time that both parties bought their properties.

*Id.* at 488, 129 P.3d at 1237. Additionally, as set out by the district court:

The driveway leaves West Garfield Bay Road heading in a southwesterly direction along the lower portions of Lots 3, 4, and 5; then turns in a hair-pin fashion on Lot 5 and crosses back across Lots 5 and 4 heading north and parallel to West Garfield Bay Road; and continues to Lot 3.

After purchasing the property, Derifield made improvements to the driveway including lessening the grade, widening the turn, and changing the location of the driveway.

Upon remand, based on the evidence offered during the original trial, the district court determined the historical scope of the easement was twelve and one-half feet wide as to the lower portion (West Garfield Bay Road to the turn), wide enough for a large vehicle to drive around the turn, and twenty feet wide as to the upper portion (the turn to the Benningers' lot). Derifield appealed.

## II. STANDARD OF REVIEW

■■■■ A trial court's factual findings will be set aside only if they are clearly erroneous. *Lovitt v. Robideaux*, 139 Idaho 322, 325, 78 P.3d 389, 392 (2003) (citing I.R.C.P. 52(a)). Findings of fact are not clearly erroneous when they are supported by substantial and competent evidence. *Id.* "Evidence is substantial and competent if a reasonable trier of fact would accept it and rely on it." *Id.* Findings based on substantial and competent evidence will not be overturned on appeal even in the face of conflicting evidence. *Benninger*, 142 Idaho at 489, 129 P.3d at 1238. "It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses." *Id.*

■■■■ This Court freely reviews questions of law. *Id.*

## III. ANALYSIS

Derifield asserts the district court should be reversed as to its finding of the width of the easement in that the district court did not limit the width to the portion occupied by a single vehicle, that the width is incorrect as to the lower portion, and that the width is incorrect as to the upper portion. The Benningers assert the district court's conclusions are based on substantial and competent evidence in the record and that they are entitled to an award of attorney fees on appeal. We will address each issue in turn.

### A. Scope of the Easement

■■■■ The determination of the dimensions of an easement will not be reversed if it is supported by substantial and competent evidence. *See Gibbens v. Weisshaupt*, 98 Idaho 633, 638, 570 P.2d 870, 875 (1977). Recognizing that "[p]rescription acts a penalty against a landowner[,]" this Court has stated prescriptive rights "should be closely scrutinized and limited by the courts." *Id.* The scope of a prescriptive easement is fixed

by the use made during the prescriptive period. *Elder v. Northwest Timber Co.*, 101 Idaho 356, 359, 613 P.2d 367, 370 (1980); *Gibbens*, 98 Idaho at 638, 570 P.2d at 875 (quoting *Bartholomew v. Staheli*, 86 Cal. App.2d 844, 195 P.2d 824, 829 (1948)).

On remand, the district court concluded:

The driveway easement is determined and declared to be at least twelve and one-half feet (12½) wide from the county road to the turn, that the turn is determined and declared to be wide enough for a large vehicle to drive around and that the final portion of the driveway easement leading to the Benninger's property is determined and declared to be twenty (20) feet wide commencing at the top portion of the Benninger's property from the tree on the corner of the Benninger's property to the corner of Derifield's building. These measurements shall include the traveled portion of the easement driveway as well as the side portions of the easement driveway.[1]

■ As to the pronouncement of the easement in general, Derifield argues that the district court improperly considered the "side portions of the easement driveway" when declaring the measurements of the easement. However, this Court has never said the scope of a right of way prescriptive easement is limited to the exact width of the car using the easement. Moreover, even Derifield acknowledges that a reasonable width would include room for the vehicle "plus some additional area on the sides."

■ Similarly, Derifield asserts the scope of the prescriptive easement should accommodate only one car and should not include the space needed by concrete trucks, well-drilling rigs, or construction equipment. However, the evidence presented during the trial shows that large vehicles used the drive-

way during the prescriptive period. Joseph Benninger testified that the driveway was in existence at the time he purchased the property, that he used it to haul boards with pickups, to provide access to a concrete truck and other service trucks, including those necessary to build a roof over their deck and to drill and service their well, and that he used it to provide access to a lumber truck. Thus, there is substantial and competent evidence to support the finding that the scope of the easement is wide enough to accommodate large vehicles.[2] We must next determine whether the width of the easement as to the lower and upper portion of the driveway is based on substantial and competent evidence in the record.

**B. Lower Portion**

■ Derifield contends it "would be proper to order the lower portion be maintained as it exists, or to set a reasonable width that gives room for the authorized vehicle to pass safely .... [or] to make the width approximately ten to twelve feet wide...." However, the function of this Court on review is not to set forth what it determines to be a reasonable width. *See Gibbens*, 98 Idaho at 638, 570 P.2d at 875. Instead, our review is limited to the determination of whether the district court's declaration that the prescriptive easement of the lower portion of the driveway is at least twelve and one-half feet wide is based on substantial and competent evidence in the record.

Derifield also argues it would be error to quantify the easement as fourteen feet wide and that such a ruling risks creating an inconsistency with the ruling that Derifield can relocate the driveway and "risk[s] that [the] driveway as it exists now is not even fourteen feet wide." This argument is irrelevant since the court declared the lower por-

1. The district court noted that Derifield's improvements to the driveway have relocated the driveway from its historical position. Nonetheless, the district court held the relocation can stand and that the scope of the easement will apply to the driveway as currently positioned. The scope of the easement is based on the district court's determination of the width of the driveway during the prescriptive period.

2. Though Derifield contends the district court's determination of the scope of the easement as to the turn should be reversed, he does not make any specific arguments on the issue. Nonetheless, Benninger's testimony is substantial and competent evidence in the record supporting the district court's determination that the turn "is wide enough for a large vehicle to drive around...."

tion of the road to be twelve and one-half feet, not fourteen feet.

As to the width of the lower portion, the district court considered the conflicting testimony presented by the parties and found the most reliable testimony was given by Douglas Russell. Russell testified there was two and a half feet on either side of the car when driving up the lower portion of the driveway. The district court observed that an average vehicle of seven and one-half feet wide, combined with two and one-half feet on each side, comprises a twelve and one-half foot easement. Therefore, though there was conflicting testimony, there was testimony supporting a conclusion that historically the lower portion of the driveway was twelve and one-half feet wide. Hence, we hold the scope of the easement as to the lower portion of the driveway is based on substantial and competent evidence in the record.

## C. Upper Portion

█ Derifield asserts it was error to find the width of the upper portion of the easement to be twenty feet. Thomas Derifield testified that when he obtained the property, the upper portion of the driveway was seven feet wide. Larry Fairfax, hired by Derifield to improve the roadway, testified that prior to making improvements, the upper portion of the easement was six to eight feet wide. Russell testified there was plenty of room to park two vehicles side by side and still have room to exit the vehicles without hitting anything. Joseph Benninger testified that he measured the width of the upper portion of the driveway and that it was twenty and one-half feet. He measured from a tree stump on his property to the corner of Derifield's building.

The district court noted that Derifield was not familiar with the driveway prior to obtaining the property and that Fairfax's testimony as to measurement did not include information on how the area was measured.

Derifield contends Joseph Benninger's testimony as to the upper portion of the driveway is inconsistent and that Joseph Benninger testified the upper portion was not wide enough to accommodate parking two cars side by side. Joseph Benninger testified the road surface on the upper portion of the driveway is twenty and one-half feet. Derifield contends this testimony is in conflict with Joseph Benninger's later statement that the width of the upper portion of the driveway was only twelve to fourteen feet. However, a review of that portion of the testimony shows that Joseph Benninger may have been confused and intended the twelve to fourteen feet width to refer to the width Derifield had drawn onto the road since the lawsuit had begun and not the historical use the Benningers made of the upper portion. In response to subsequent questions, Joseph Benninger clarified that the historical width of the roadway is twenty and one-half feet. Joseph Benninger also testified that there is room for two cars to park side by side. Regardless of the possible conflicts in Joseph Benninger's testimony, Russell's testimony that the upper portion of the easement is wide enough to park two cars side by side supports the district court's conclusion that the upper portion of the easement is twenty feet wide and the district court emphasized the reliability of Russell's testimony. "It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses." *Benninger*, 142 Idaho at 489, 129 P.3d at 1238. Therefore, we hold the district court's determination that the historical scope of the upper portion of the easement is twenty feet wide is based on substantial and competent evidence in the record.

In conclusion, because there is substantial and competent evidence to support the district court's determination of the scope of the easement as to the turn, the lower portion, and the upper portion, we affirm the district court's judgment on remand.

## D. Attorney Fees

█ The Benningers request an award of attorney fees on appeal pursuant to I.C. § 12–121. That statute allows an award of "reasonable attorney's fees to the prevailing party...." I.C. § 12–121. Attorney fees are awarded to the prevailing party if "the Court determines that the action was brought or pursued frivolously, unreasonably or without foundation." *Baker v. Sullivan*,

132 Idaho 746, 751, 979 P.2d 619, 624 (1999). An award of attorney fees under this statute "is appropriate if the appellant simply invites the appellate court to second-guess the trial court on conflicting evidence." *Hogg v. Wolske,* 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006).

Derifield's arguments on appeal have only asked this Court to second-guess the trial court's determinations based on conflicting evidence presented during trial. Therefore, we award the Benningers attorney fees on appeal.

## IV. CONCLUSION

We affirm the district court's judgment as to the scope of the easement and we award the Benningers attorney fees on appeal. Costs to Respondent.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, Concur.